**Raymond J. DONOVAN, Secretary of Labor United States Department of Labor, Plaintiff-Appellant,**

v.

**TEXACO INC., Defendant-Appellee.**

**No. 82–2248.**

United States Court of Appeals,
Fifth Circuit.

Dec. 2, 1983.

Mary-Helen Mautner, John A. Bryson, U.S. Dept. of Labor, Washington, D.C., for plaintiff-appellant.

James D. Garrison, Susannah B. Wilshire, Houston, Tex., for defendant-appellee.

Proskauer, Rose, Goetz & Mendelsohn, Bettina B. Plevan, Shelley Sanders Kehl, New York City, for amicus-Tanker Service Committee, Inc. & AIMS.

Before CLARK, Chief Judge, GEE and POLITZ, Circuit Judges.

GEE, Circuit Judge:

The major issue in this case is whether OSHA's prohibition against retaliatory discharge of a complaining employee applies to blue-water seamen. We hold that it does not.

*Facts*

Donald Jensenius, a Coast Guard-licensed engineering officer employed by defendant Texaco Inc. in its deep sea fleet, complained directly to the Coast Guard about the condition of certain generating equipment on his vessel, without first advising the Master or the Chief Engineer, his superior, of his concerns. After a prompt Coast Guard inspection revealed no deficiencies in the equipment, Jensenius told the Chief Engineer that he was the one who had called the Coast Guard. In consequence, he was demoted; when he refused to accept the de-

motion he was discharged. He complained of retaliation to OSHA, and this action followed. Concluding that the Secretary lacked jurisdiction to bring it, the trial judge granted summary judgment for Texaco. 535 F.Supp. 641 (E.D.Tex.1982). The Secretary appeals.

*Background Authority*

■ It is the law of this circuit that OSHA regulations do not apply to working conditions of seamen on vessels in navigation, such vessels as that on which Jensenius served. *Clary v. Ocean Drilling and Exploration Co.,* 609 F.2d 1120 (5th Cir. 1980). In *Clary* a seaman claimed that he had been injured on a vessel when he tripped over a stumbling hazard that had not been painted yellow, as OSHA regulations required. Upholding the trial court's refusal to permit even the introduction in evidence of the color-coding OSHA regulation, we held:

> The court correctly ruled on sound reasoning that OSHA regulations do not apply to vessels in navigation. *Clary v. Ocean Drilling & Exploration Co.,* 429 F.Supp. 905 (W.D.La.1977).

> The OSHA regulations proffered into evidence by plaintiff do not apply to working conditions of seamen on vessels in navigation for three reasons. First, the Act itself provides that

> > Nothing in this chapter shall apply to working conditions of employees with respect to which other Federal agencies . . . exercise statutory authority to prescribe or enforce standards or regulations affecting occupational safety or health.

29 U.S.C.A. § 653(b)(1). The Coast Guard is a federal agency exercising statutory authority over the working conditions of seamen. Coast Guard regulations cover, among other things, standards governing the safety and health of persons working on vessels. 46 C.F.R. §§ 1.01–196.85 (1978).

609 F.2d at 1121–22. *See also Taylor v. Moore-McCormack Lines, Inc.,* 621 F.2d 88 (4th Cir.1980) (Coast Guard has exclusive responsibility for safety of seamen; the Secretary, under OSHA, for that of longshoremen).

Indeed, the Occupational Safety and Health Review Commission itself seems to have concluded that Section 4(b)(1) of the Act, codified as 29 U.S.C. § 653(b)(1) and quoted above, creates—in view of the Coast Guard's comprehensive regulation and supervision of seamen's working conditions—an industry-wide exemption for seamen serving on vessels operating on navigable waters. *Secretary of Labor v. Dillingham Tug and Barge Corp.,* 10 B.N.A. OSHC 1859 (1982).[1] Before us, the Secretary does not contend that the Coast Guard lacks or has failed to exercise statutory authority to regulate pervasively and generally shipboard working conditions affecting occupational safety and health; his argument takes a different tack.

*The Secretary's Contention*

■ Instead, he contends that since the Coast Guard regulatory plan does not incorporate a specific prohibition against such retaliatory action as Jensenius suffered, that of the Occupational Safety Health Act has not been displaced and controls this action.[2] Further, he contends, freedom

---

1. Our decision in *Southern Pacific Transportation Co. v. Usery,* 539 F.2d 386 (5th Cir.1976), relied on by the Secretary, is not to the contrary. There we rejected both the "nook and cranny" construction of § 4(b)(1)—that whatever detail the dominant federal agency left untouched OSHA might regulate—and what we may term the invariable industry-wide exemption construction—that at the moment a dominant agency exercises its regulatory authority on any aspect of an industry, OSHA's regulatory scheme is thereby completely abrogated as to that industry. Our opinion clearly envisions that regulation of an industry by the

dominant agency may be so general and pervasive as to displace OSHA coverage of it entirely, as we conclude the Coast Guard's has here. 539 F.2d at 391–92.

2. Section 11(c)(1), 29 U.S.C. § 660(c)(1), provides that:

   No person shall discharge or in any manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or *related to this Act* . . . or because of the exercise by such employee on

from retaliatory discrimination is not a "working condition" and hence is not affected by the admittedly pervasive Coast Guard regulation of these. And so we arrive at the heart of the case. The issue is well-briefed and persuasively argued on all hands, as befits one of its obvious importance; but for several reasons we must reject the Secretary's persuasive arguments.

We commence our inquiry into the intent of Congress by consulting its language. Section 4(b)(1) declares that "[n]othing in this Chapter shall apply to working conditions of employees with respect to which other federal agencies ... exercise statutory authority ..." and so on. Given *Clary*, which holds that with respect to seamen the Coast Guard is such an agency, for present purposes we may redact the section as follows:

Nothing in OSHA shall apply to working conditions of seamen on vessels.

Section 11(c)(1) is patently "something" in OSHA. Jensenius was a seaman on a vessel. Nothing in OSHA, therefore, applies to his working conditions. Since his complaint was about those conditions, and since the section is a part of OSHA, Section 11(c) does not apply to it.

The Secretary seeks to deflect the thrust of this analysis by contending that protection against retaliation is not itself a "working condition." We are dubious: it does not seem to strain the concept unduly to view the right to complain about job hazards without fear of retaliation as a condition of work. But even assuming that it is not, still it is clearly something in OSHA that, absent Section 4(b)(1), would *apply* to working conditions; therefore, in view of Section 4(b)(1), it does not. Q.E.D.

Although the abstract logic of our stated observations seems to us impeccable, we recognize their somewhat Aquinan quality. We are sustained in adhering to them, however, by other considerations of a more mundane character. Section 4(b)(1) evidences a general Congressional intent to forbid overlapping regulation of working conditions in any given industry by multiple federal agencies. Such redundant control programs offer little except confusion, governmental proliferation, and stultification of enterprise. Congress having declared against them in this instance, it is not for us to disagree.[3]

behalf of himself or others of any right afforded by this Act.

(emphasis added). As codified, the statute replaces "this Act" with "this chapter," 29 U.S.C. Chapter 15, "which encompasses the complete text of OSHA." *Southern Pacific Transportation Co. v. Usery*, 539 F.2d 386, 389 (5th Cir. 1976), *cert. denied sub nom, Seaboard C.L.R. Co. v. Occupational Safety & Health Review Comm.*, 434 U.S. 874, 98 S.Ct. 221, 54 L.Ed.2d 154 (1977).

The Secretary's interpretative regulation, 29 C.F.R. 1977.9(b), provides that "[c]omplaints registered with other federal agencies which have the authority to regulate or investigate occupational safety and health conditions are complaints 'related to' this Act."

3. The Secretary offers for our consideration a sort of peace treaty between OSHA and the Coast Guard. Among its provisions is the following:

OSHA has a general statutory authority to assure safe and healthful working conditions for working men and women under the Occupational Safety and Health (OSH) Act of 1970. Section 4(b)(1) of the OSH Act defines the relationship between OSHA and the other federal agencies whose exercise of statutory responsibilities may affect occupational safety and health. Based on OSHA's interpretation of section 4(b)(1), and as a result of the Coast Guard's exercise of its authority, described above. OSHA has concluded that it may not enforce the OSH Act with respect to the working conditions of seamen aboard inspected vessels. Nonetheless, OSHA retains the following responsibilities.

OSHA retains its authority under section 11(c) of the OSH Act, which forbids discrimination in any manner against employees who have exercised any right afforded them under the OSH Act. Pursuant to this provision, OSHA has the authority to require vessel owners to post a notice that informs employees of their right to complain about working conditions to the Coast Guard, OSHA, or the employer and to be free from retaliatory discrimination. OSHA has concluded that its exercise of authority under section 11(c) if [sic] not precluded by the scope of section 4(b)(1) of the OSH Act.

48 Fed.Reg. No. 53, March 17, 1983.

We commend the effort, there represented, of the agencies to arrive at an ad interim mode of composing their conflicting assertions of authority. Since, for our Circuit, these are today

We are further sustained in our conclusion by several additional considerations pressed upon us by Texaco and by the able brief of amici. First, it must be conceded that the living and working conditions of seamen are unique, justifying special treatment of and special restrictions upon their rights as employees. We are aware of no other civilian calling, for example, in which obedience to the employer's orders is enforced by criminal sanctions. 18 U.S.C. §§ 2192, 2193 (punishing revolt or mutiny and incitement to either). The decision in *Southern Steamship Co. v. NLRB*, 316 U.S. 31, 62 S.Ct. 886, 86 L.Ed. 1246 (1941), holding a strike on a docked vessel to violate these statutes, highlights the sharp distinction between employment rights of landside workers and those of seamen. As the Court there observed:

> Ever since men have gone to sea, the relationship of master to seaman has been entirely different from that of employer to employee on land. The lives of passengers and crew as well as the safety of ship and cargo are entrusted to the master's care. Every one and every thing depend on him. He must command and the crew must obey. Authority cannot be divided. These are actualities which the law has always recognized. On the one hand, it has imposed numerous prohibitions against conduct by seamen which destroys or impairs this authority. We shall consider in a moment the nature and scope of the criminal sanctions imposed in case of revolt and mutiny. But it is worth noting here that the form of the "shipping articles" which the master and every member of the crew must sign prior to the voyage has been carefully prescribed by Congress, and that these articles contain this promise: "And the said crew agree ... to be obedient to the lawful commands of the said master ... and their superior officers in everything relating to the vessel, and the stores and cargo thereof, whether on board, in boats, or on shore..." 46 USCA §§ 564, 713. On the other hand, workers at sea have been the beneficiaries of extraordinary legislative solicitude, undoubtedly prompted by the limits upon their ability to help themselves. The statutes of the United States contain elaborate requirements with respect to such matters as their medicines, clothing, heat, hours and watches, wages, and return transportation to this country if destitute abroad. 46 USCA §§ 651–692, 1131.

316 U.S. at 38–39, 62 S.Ct. at 890.

Section after section of the United States Code governs and regulates in minute detail the rights and duties of seamen, down to the form of shipping articles to be signed by them and the contents of their daily diet. 46 U.S.C. § 713, Table A. *See* 46 U.S.C. §§ 541–713. Among these are to be found provisions affording protections paralleling, in some degree, that accorded complaining landside workers by the provisions of Section 11(c) of OSHA.[4] *See* 46 U.S.C. §§ 653–660. These are, however, framed in such a manner as to balance the right to complain about shipboard working conditions against the need for discipline and obedience to the master's authority. Other laws and regulations flesh out the protective scheme. *See* 46 U.S.C. §§ 234 (dismissal from service of Coast Guard official disclosing source of information), 239(i) (criminal penalty for coercion of witnesses in connection with marine casualty investigation), and 594 (right to wages in case of improper discharge); 46 C.F.R. §§ 4.11–5 (coercion of witnesses in connection with investigation of marine casualty or acci-

---

resolved—subject only to the discretionary intervention of our full Court en banc .or the Supreme Court—we attach little significance to the agencies' earlier estimations of the relative strength of their positions to be debated before us. It is not for modalities of the federal power to trade functions between themselves in perpetuity by agreement; the will of Congress must control. The basis of their compromise having today vanished, the compromise vanishes also. For our Circuit, on this point, the agreement is no more.

4. Jensenius could, for example, have voiced his concern about the generator confidentially to any Coast Guard officer, who would have respected his confidence on pain of discharge from the service. 46 U.S.C. § 234.

dent) and 5.20–87 (coercion of witnesses in connection with a proceeding to suspend any license, certificate or document issued by the Coast Guard); and 33 C.F.R. § 1.07–30 (1981) (nondisclosure of the identity of a confidential informant).

We are persuaded that to impose on this ancient and delicately balanced scheme, long predating OSHA and crafted to conform to the special conditions of seamen's complaints about shipboard working conditions, the parallel but divergent protective plan of 11(c) would be precisely the sort of duplication that the Congress meant to forbid by enacting Section 4(b)(1) of OSHA.

Finally, doing so might well produce an additional anomaly, that of steaming in and out of OSHA coverage. The geographic reach of OSHA is confined to "employment performed in a workplace in a State, the District of Columbia, the Commonwealth of Puerto Rico, ... [various listed United States' possessions and territories, and] Outer Continental Shelf Lands defined in the Outer Continental Shelf Lands Act...." 29 U.S.C. § 653(a). A vessel on the high seas is not such a "workplace." Cf. OCAWIU v. Mobil Oil Corp., 426 U.S. 407, 96 S.Ct. 2140, 48 L.Ed.2d 736 (1976) (state right to work law inapplicable to employment on the high seas where predominant job situs is outside any state's boundary); Southern Steamship Co. v. NLRB, 316 U.S. 31, 62 S.Ct. 886, 86 L.Ed. 1246 (1941) (strike on docked vessel; mutiny statute still applies).

The Secretary counters the above suggestion by pointing out that all of the acts significant to today's case were done on United States' territory: Jensenius complained to the Coast Guard while his ship was docked at a Texas port and he was demoted and discharged on shore. Significantly, the Secretary does not contend that had these actions occurred on the high seas, OSHA would have applied to them. By his silence he all but espouses the notion that seamen on a vessel steam in and out of OSHA coverage as they enter or depart

ports in United States' territory. This would be, we think, a disastrous and unworkable rule: one that would require, as an instance drawn from Clary, supra, vessels to paint all stumbling hazards yellow as they enter port, one that would forbid retaliation for complaints made to the Coast Guard in port but not for those made to it on the high seas, and so forth.

From Southern Steamship, from OCAW-IU, and from common sense, we derive the principle that a single, uniform set of rules should govern the maritime workplace. Because of OSHA's geographic limitations noted above, this cannot be those of OSHA.[5] For this additional reason, we conclude that it must be those of the Coast Guard.

The judgment of the trial court is

AFFIRMED.

---

**5.** That Congress did not set these without considering the seas is indicated by its inclusion of the Outer Continental Shelf Lands in OSHA's coverage.