## In re INSPECTION OF NORFOLK DREDGING CO. and the Dredge "Jeckell".

### No. 84–4197–CIV.

United States District Court, S.D. Florida, N.D.

Sept. 10, 1984.

———

Fitzgerald & Taylor, Fort Lauderdale, Fla., for Norfolk Dredging Co.

Donald McCoy, Fort Lauderdale, Fla., for OSHA.

### ORDER

GONZALEZ, District Judge.

THIS CAUSE has come before the court upon appeal of the Honorable Patricia Kyle's decision denying the motion of the Norfolk Dredging Company ("Norfolk") and the dredge "Jeckell" to quash the administrative search warrant issued to the Occupational Safety and Health Administration ("OSHA"). The sole issue before the court is whether section 4(b)(1) of the Occupational Safety and Health Act, 29 U.S.C.A. § 653(b)(1) (1975), precludes an OSHA inspection because the United States Coast Guard has jurisdiction over safety aboard "uninspected" vessels.

The facts giving rise to this case are relatively simple. On April 30, 1984, an employee of Norfolk was fatally injured when the boom of the crane he was operating fell and struck him. The employee and the crane were on the same "uninspected" dredge in navigable waters within the State of Florida. Shortly after the accident, another employee of Norfolk filed a complaint with OSHA charging the company with providing unsafe working conditions aboard the dredge. When officers of OSHA attempted to inspect the dredge, representatives of Norfolk denied them entry. OSHA applied to Magistrate Kyle for an administrative inspection warrant authorizing an examination of the barge. The Magistrate signed the warrant and Norfolk moved to quash it. The Magistrate denied that motion prompting this appeal.

OSHA seeks affirmance of the Magistrate's decision principally on the basis of the Second Circuit's ruling in *Donovan v. Red Star Marine Services, Inc.*, 739 F.2d 774 (2d Cir.1984). In *Red Star*, OSHA suspected that the tugboat failed to provide protection against excessive noise levels. When inspectors attempted to board the vessel, representatives of the Red Star denied them entry and contested OSHA's authority to conduct the investigation. The

OSH Commission held, *inter alia,* that OSHA did not have jurisdiction over the working conditions of "seamen" aboard uninspected vessels. The Second Circuit reversed in part and remanded the case, ruling that section 4(b)(1) of OSH Act did not preclude OSHA from exercising jurisdiction over "uninspected" vessels.

Upon examination of the *Red Star* decision, it is clear that the court ruled as it did because the tugboat was an "uninspected" vessel. One passage in the decision is illustrative of the point.

> [I]t cannot be questioned that there is a significant distinction between "uninspected" vessels and "inspected and certificated" vessels, in that the regulations affecting "inspected and certificated" vessels are more numerous, extensive, and pervasive than those affecting "uninspected" vessels.
>
> . . . .
>
> Although not in issue, the Secretary concedes that the pervasive regulations by the Coast Guard of safety and health aboard *inspected* vessels eliminates or excludes OSHA's jurisdiction over those vessels.[2]

[2] In accordance with a "Memorandum of Understanding" signed by the Commandant of the Coast Guard and the Assistant Secretary for [OSHA], the Secretary has taken the position that "the Coast Guard has issued comprehensive standards and regulations concerning the working conditions of seamen aboard *inspected* vessels," and that OSHA may not enforce its regulations with respect to "seamen" aboard *inspected* vessels.

*Red Star,* at 777–778.

There were other reasons for the Second Circuit's decision. The court found that Congress historically has limited the Coast Guard's authority to regulate uninspected vessels to life-saving and fire-fighting matters. The court also was of the opinion that section 4(b)(1) limits OSHA's jurisdiction only when a sister federal agency *actually* is exercising authority in the same area, and the Coast Guard does not exercise this type of authority over uninspected vessels. For all of these reasons, the court of appeals instructed the OSH Commission to permit OSHA agents to inspect the tugboat.

This court respectfully reaches a different result largely because the Eleventh Circuit and the former Fifth Circuit have decided otherwise while expressly rejecting the arguments cited by the Second Circuit in support of its decision.

The starting point for our analysis is *Donovan v. Texaco, Inc.,* 720 F.2d 825 (5th Cir.1983). The *Donovan* court had to decide whether OSHA's prohibition against the retaliatory discharge of an employee applies to a Texaco employee who had complained to the Coast Guard about certain generating equipment aboard a vessel in navigable waters and, as a result, was demoted. The district court ruled that OSHA lacked jurisdiction to sue Texaco on the employee's behalf, and the appellate court affirmed.

In view of the *Red Star* court's reliance on the "uninspected" status of the vessel in reaching its decision, it would appear that the most significant aspect of *Donovan* is that court's refusal to draw a legal distinction between "inspected" and "uninspected" vessels for purposes of defining the scope of OSHA's jurisdiction. After quoting from the OSHA-Coast Guard memorandum agreement (cited at 48 Fed.Reg. No. 53, Mar. 17, 1983, and referred to in part herein, *supra* p. 2–3), the *Donovan* court clearly and unequivocally refused to give it any legal significance. The court's comments are worth repeating.

> We commend the effort ... of the agencies to arrive at an ad interim mode of composing their conflicting assertions of authority. Since, for our Circuit, these are today resolved ... we attach little significance to the agencies' earlier estimations of the relative strength of their positions to be debated before us. It is not for modalities of the federal power to trade functions between themselves in perpetuity by agreement; the will of Congress must control. The basis of their compromise vanishes also. For

our Circuit, on this point, the agreement is no more.

720 F.2d at 827–28 n. 3.

A careful reading of *Donovan* makes clear that the Eleventh Circuit is more concerned with the general industry-wide exemption for seamen serving on vessels operating on navigable waters created by section 4(b)(1) than it is with the legal status of the vessel itself. Section 4(b)(1) states that OSHA regulations do not apply to the "working conditions of employees" whose well-being is monitored by other federal agencies. The *Donovan* court found that the Coast Guard's "comprehensive regulation and supervision of seamen's conditions" aboard vessels operating in navigable waters were sufficiently "general and pervasive as to displace OSHA coverage of it entirely ...." *Id.* at 826 & n. 1 (relying on *Southern Pacific Transportation Co. v. Usery*, 539 F.2d 386 (5th Cir.1976), and *Secretary of Labor v. Dillingham Tug and Barge Corp.*, 10 B.N.A. OSHC 1859 (1982)). This finding is particularly important because the Coast Guard regulations in *Donovan* lacked a specific prohibition against retaliatory discharges, and the Eleventh Circuit easily could have limited the Coast Guard's jurisdiction because of the disparity in the specificity of its regulations vis-a-vis those of OSHA on the subject. But it did not chiefly because the court considered the right to complain about job hazards without fear of retaliation to be a condition of work which the Coast Guard regulates generally, though it may not have promulgated a specific prohibition against such employer actions. The Fifth Circuit's decision in *Clary v. Ocean Drilling and Exploration Co.*, 609 F.2d 1120 (5th Cir.1980), holding that OSHA regulations do not apply to the working conditions of seamen on vessels in navigation, is consistent with the result in *Donovan.*

The *Donovan* court also circumscribed OSHA's jurisdiction because the Coast Guard was seen as the agency most capable of appreciating and thus capable of regulating the "unique" working and living conditions of seamen. The court examined a host of Coast Guard regulations and found that many "afford[ed] protections paralleling, in some degree, that accorded complaining landside workers by the [retaliatory discharge] provisions of Section 11(c) of OSHA." 720 F.2d at 828. The court reasoned that

> to impose on this ancient and delicately balanced scheme, long predating OSHA and crafted to conform to the special conditions of seamen's complaints about shipboard working conditions, the parallel but divergent protective plan of 11(c) would be precisely the sort of duplication that the Congress meant to forbid by enacting Section 4(b)(1) of OSHA.

Additionally, the Eleventh Circuit found that OSHA's regulations do not apply to vessels on navigable waters except those on Outer Continental Shelf Lands. 720 F.2d at 829.

The *Donovan* decision stands as a beacon directing this court to the proper result. Rather than focus on the "uninspected" status of the vessel, as did the Second Circuit in *Red Star*, *Donovan* counsels us to examine the Coast Guard's regulations to determine if they are sufficiently extensive to cover the situation presented by the death of a Norfolk employee. The Coast Guard's regulations need not cover the field with particularity, for if the general regulations governing employee discharge addressed in *Donovan* were legally adequate, then similarly generalized rules will do here, too. This is especially true where, as here, the matter is one that traditionally falls within the Coast Guard's jurisdiction.

A review of the statutes governing Coast Guard activities reveals several provisions that provide for Coast Guard jurisdiction over safety and working conditions aboard vessels. Section 653 of Title 46 of the United States Code entitles a crew member to complain about the seaworthiness of his vessel; section 658 addresses the discharge of the crew if the vessel is unseaworthy; and sections 660a and 660b discuss the Coast Guard's authority to inspect the crew quarters of rigged and unrigged vessels, respectively.

The federal regulations also are dotted with sections detailing the Coast Guard's jurisdiction over boating safety. For example, the Coast Guard oversees equipment safety on vessels, 33 C.R.F. §§ 175.1–.140, 183.1–.715 (1983); it has the authority to investigate accidents aboard ship, 46 C.F.R. §§ 4.01–.40 (1983); and there exists a fairly detailed set of regulations setting forth the Coast Guard's responsibilities for the safety of working conditions aboard uninspected vessels, 46 C.F.R. §§ 24, 25, & 26 (1983).

Based on the existing statutory and regulatory provisions governing Coast Guard activity, the court finds that the Coast Guard does have jurisdiction over the accident aboard the Norfolk, and thus OSHA cannot commence an investigation that is duplicative and effectively ousts the Coast Guard of its authority over the incident. This conclusion finds further support in the secondary and tertiary rationales of the *Donovan* court (explained above), whose reasoning and conclusion distinguishes this case from the *Red Star* decision.

Accordingly, the decision of the Magistrate denying Norfolk's motion to quash OSHA's administrative inspection warrant is REVERSED, and this case is REMANDED to the Magistrate's Court for a result consistent with this opinion.