In re INSPECTION OF NORFOLK DREDGING COMPANY.

Appeal of UNITED STATES SECRETARY OF LABOR, Appellant.

No. 84–5896.

United States Court of Appeals, Eleventh Circuit.

March 10, 1986.

Rehearing and Rehearing En Banc Denied April 14, 1986.

Andrea C. Casson, U.S. Dept. of Labor, Washington, D.C., for appellant.

Ronald A. Fitzgerald, Ft. Lauderdale, Fla., for Norfolk Dredging Co.

Before VANCE and HATCHETT, Circuit Judges, and ATKINS *, Senior District Judge.

HATCHETT, Circuit Judge:

The district court quashed an Occupational Safety and Health Administration (OSHA) inspection warrant on the ground that OSHA lacks jurisdiction over working conditions aboard uninspected vessels in navigable waters. We reverse.

FACTS AND PROCEDURAL HISTORY

Appellee, Norfolk Dredging Company (Norfolk) operates a dredge known as "Je- kyll Island" in navigable waters off the west coast of Florida. On April 30, 1984, one Norfolk employee was killed and another employee injured due to the operation of a crane aboard the "Lima" barge.[1] Acting pursuant to 46 U.S.C.A. § 6301 (West Supp.1983), which authorizes the Coast Guard to investigate marine casualties, the Coast Guard initiated an investigation of the incident.

On May 10, 1984, in response to a Norfolk employee's complaint of inadequate maintenance of crane equipment and cables aboard the "Lima," an OSHA compliance officer attempted to conduct a fatality investigation and safety inspection of the "Jekyll Island." Norfolk refused him entry onto the dredge. Acting pursuant to 29 C.F.R. § 1903.4 (1985), OSHA obtained an ex parte administrative warrant to inspect the dredge.

Norfolk learned of the issuance of the warrant before its execution and moved to quash it. The magistrate who had issued the warrant denied Norfolk's motion. On appeal, the district court found that the Coast Guard's regulatory scheme encompassing safety and working conditions aboard vessels was so pervasive that, under section 4(b)(1) of the Occupational Safety and Health Act of 1970, 29 U.S.C.A. § 653(b)(1) (West 1975), it preempted OSHA's jurisdiction over safety aboard uninspected vessels. Accordingly, the district court ordered the warrant quashed. *In Re Inspection of Norfolk Dredging Company,* 595 F.Supp. 517 (S.D.Fla.1984).

CONTENTIONS OF THE PARTIES

OSHA contends that the district court abused its discretion by addressing the merits of Norfolk's claim without requiring Norfolk to exhaust its administrative remedies. Norfolk counters that the policy considerations underlying the exhaustion doc-

---

* Honorable C. Clyde Atkins, Senior U.S. District Judge for the Southern District of Florida, sitting by designation.

1. The "Lima" is one of two "Jekyll Island" barges. The second barge is known as the "Unit."

trine would not be served by requiring exhaustion in this case, and that several exceptions to the exhaustion doctrine are applicable.

Assuming that the issue of OSHA's jurisdiction was properly before the district court, OSHA further contends that the district court incorrectly construed section 4(b)(1). OSHA argues that its jurisdiction under section 4(b)(1) is preempted only where another agency actually exercises its authority. The Coast Guard's comprehensive regulatory scheme applies primarily to inspected vessels; therefore, the Coast Guard's regulatory scheme does not constitute an exercise of authority over uninspected vessels sufficient to divest OSHA of jurisdiction.

Norfolk contends that the Coast Guard's comprehensive regulatory scheme constitutes an exercise of its jurisdiction over uninspected vessels sufficient to preempt OSHA's regulatory authority, and that OSHA itself has recognized that the Coast Guard has jurisdiction over vessel crews.

## ISSUES

We are asked to resolve a jurisdictional conflict between the inspection authority of OSHA and the Coast Guard. It is important to note, however, that the Coast Guard is not before the court. Our first issue is whether a party challenging OSHA's jurisdiction must exhaust administrative remedies before seeking redress in federal court. Next, we consider whether the Coast Guard's regulation of working conditions aboard vessels is so pervasive that it preempts OSHA's jurisdiction over uninspected vessels.

## DISCUSSION

In the Occupational Safety and Health Act of 1970, 29 U.S.C.A. § 651(b) (West 1985), "Congress declare[d] it to be its purpose and policy ... to assure so far as possible every working man and woman in the Nation safety and healthful working conditions and to preserve our human resources...." The Secretary of the Department of Labor, acting through OSHA, is charged with the responsibility of implementing this purpose.

OSHA's enforcement powers include the authority to enter, inspect, and investigate places of employment. 29 U.S.C.A. § 657(a) (West 1985). OSHA's enforcement authority is not, however, absolute. Section 4(b)(1) of the Act provides:

Nothing in [the Act] shall apply to working conditions of employees with regard to which other Federal agencies ... exercise statutory authority to prescribe or enforce standards or regulations affecting occupational safety and health.

29 U.S.C.A. § 653(b)(1). The second issue in this case turns upon the interpretation and application of section 4(b)(1).

### I. Exhaustion of Administrative Remedies

OSHA contends that the interpretation and application of section 4(b)(1) is not properly before us because Norfolk failed to exhaust its administrative remedies before presenting the issue to the district court. OSHA urges a ruling that Norfolk must submit to the inspection, then if violations are found and citations issued, Norfolk may contest OSHA's jurisdiction in proceedings before the Occupational Safety and Health Review Commission (OSHRC). See 29 U.S.C.A. § 659 (West 1985); *Cerro Metal Products v. Marshall*, 620 F.2d 964, 970 (3rd Cir.1980). Other circuits have adopted this analysis. *See, e.g., Marshall v. Burlington Northern, Inc.*, 595 F.2d 511 (9th Cir.1979); *Matter of Restland Memorial Park*, 540 F.2d 626 (3rd Cir.1976).

The exhaustion doctrine requires parties to pursue all administrative remedies before seeking judicial relief. *Parisi v. Davidson*, 405 U.S. 34, 92 S.Ct. 815, 31 L.Ed.2d 17 (1972); *Panola Land Buyers Association v. Shuman*, 762 F.2d 1550, 1556 (11th Cir.1985); *Jean v. Nelson*, 711 F.2d 1455, 1505–06 (11th Cir.1983). Ex-

haustion is not a jurisdictional requirement. Rather, it is a matter of discretion with the district court. *Panola Land Buyers Association*, 762 F.2d at 1556–57; *Jean*, 711 F.2d at 1505–06.

Our determination of whether the district court abused its discretion is twofold. We consider (1) whether requiring exhaustion in this case would further the policies underlying the doctrine, and (2) whether any exceptions to the doctrine are applicable. *Deltona Corporation v. Alexander*, 682 F.2d 888, 893–94 (11th Cir.1982); *Baldwin Metals Company, Inc. v. Donovan*, 642 F.2d 768, 771 (5th Cir.1981).[2]

The policies underlying the exhaustion doctrine are many. They include:

> protecting administrative autonomy, deferring to agency expertise, facilitating judicial review through creation of a factual record by the agency, and conserving the time and energy of the courts since the judicial controversy may be mooted if the agency grants the relief sought.

*Baldwin*, 642 F.2d at 771–72; *see also Jean*, 711 F.2d at 1505–06 (quoting *Haitian Refugee Center v. Smith*, 676 F.2d 1023, 1034 (5th Cir. Unit B 1982) (citations omitted)); *Deltona Corporation* 682 F.2d at 893.[3]

■ The facts and circumstances of this case counsel against exhaustion.

> If resort to the prescribed administrative procedures would be futile or inadequate to prevent irreparable injury, or if blatant violations of constitutional or statutory rights have already occurred, the exhaustion of administrative remedies should not be required.

*Baldwin*, 642 F.2d at 773 (citations omitted).

In this case, OSHA did not blatantly violate Norfolk's rights. On the other hand, we cannot say Norfolk's pursuit of its administrative remedies would have been futile. It is clear, however, that Norfolk would suffer irreparable injury if it were required to exhaust its administrative remedies.

In *Baldwin*, we held that

> if a federal court is asked to consider the validity of a warrant prior to its execution ... exhaustion of remedies will not be appropriate, since the irreparable harm of the threatened unconstitutional search can be prevented prior to the warrant's execution.

642 F.2d at 774 n. 13 (citations omitted).

Relief is available to an employer where OSHA issues citations based upon violations found during an allegedly unconstitutional inspection. Under this circumstance, the employer could seek judicial review of the administrative decision to use evidence of violations found during the inspection. The employer has no relief from an unconstitutional search, however, if no safety violations are found. The injury is real with or without a violation. Thus, the injury is irreparable.

OSHA has not executed the inspection warrant issued in this case. The irreparable injury exception to the exhaustion doctrine is, therefore, applicable to prevent the allegedly unconstitutional search.

*Marshall v. Burlington Northern, Inc.*, 595 F.2d 511 (9th Cir.1979), which OSHA relies upon, is not to the contrary. The allegedly unconstitutional search in *Burlington* had already occurred at the time the employer raised the section 4(b)(1) jurisdictional issue before the district court. OSHA had conducted a safety inspection and found safety violations. "[A]ny injury due to an erroneous admission by OSHRC of the allegedly unconstitutionally seized

---

2. Fifth Circuit opinions rendered prior to October 1, 1981, are binding precedent in the Eleventh Circuit until overruled by this court sitting en banc. *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir.1981) (en banc).

3. Fifth Circuit Unit B decisions rendered after September 30, 1981, are binding precedent in the Eleventh Circuit until overruled by this court sitting en banc. *Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir.1982).

evidence [could] be 'repaired' by judicial review of the OSHRC decision, and therefore [was] not 'irreparable.'" *Baldwin,* 642 F.2d at 774. The Supreme Court held in *Marshall v. Barlow's Inc.,* 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978), that the fourth amendment prohibits warrantless safety inspections under 28 U.S.C.A. § 657(a). The inspection in *Burlington* occurred three years prior, in 1975. Thus, the compliance officer in *Burlington* did not act pursuant to an inspection warrant.

The Third Circuit held in *Matter of Restland Memorial Park,* 540 F.2d 626 (3d Cir.1976), that exhaustion was required even though OSHA's jurisdiction was challenged before an inspection had occurred. The Third Circuit retreated from this position, however, in *Cerro Metal Products v. Marshall,* 620 F.2d 964, 970–72 (3d Cir. 1980).

The consolidated appeals in *Cerro* were from preliminary injunctions which the district court had ordered prohibiting OSHA from applying for ex parte inspection warrants. The *Cerro* court examined the policies underlying the exhaustion doctrine and "conclude[d] that no legitimate purpose would be served by requiring exhaustion of administrative remedies in the context of [that] dispute." *Cerro,* 620 F.2d at 971. The court held in the alternative that, were the case deemed to be one normally subject to the exhaustion requirement, the irreparable injury exception would apply. *Cerro,* 620 F.2d at 971–72 n. 17. Consequently, the district court did not abuse its discretion by not requiring Norfolk to exhaust its administrative remedies.

II. Preemption Under Section 4(b)(1)

Having concluded that the district court properly exercised jurisdiction over Norfolk's claim, we next address whether the Coast Guard's exercise of authority over maritime safety is sufficient to preempt OSHA of jurisdiction over working conditions aboard uninspected vessels.

OSHA is charged with the responsibility of regulating the health and safety of our nation's workforce. *Donovan v. Red Star Marine Services, Inc.,* 739 F.2d 774, 777 (2d Cir.1984). Cognizant that the authority of federal agencies having jurisdiction over specific industries also includes the authority to promulgate employee health and safety standards, Congress enacted section 4(b)(1) to avoid duplication of effort and resources. *Southern Pacific Transportation Co. v. Usery,* 539 F.2d 386, 392 (5th Cir.1976).

The mere existence of an agency's authority to regulate health and safety *is not sufficient* to preempt OSHA of jurisdiction under section 4(b)(1); "some 'exercise' of that authority is necessary." *Southern Pacific,* 539 F.2d at 389. The dominant agency must either promulgate regulations governing the working condition at issue, or articulate a policy that the condition not be regulated. *Southern Pacific,* 539 F.2d at 391–92.

This issue turns on the difference between "inspected" and "uninspected" vessels. "Uninspected vessels" are defined in 46 U.S.C.A. § 2101(43) (West Supp.1985) as nonrecreational vessels not subject to the Coast Guard's safety inspection and certification authority. Uninspected vessels are vessels such as tugboats, towing vessels, and barges. It is undisputed that "Jekyll Island" is an uninspected vessel in navigable waters and that the Coast Guard exercises limited authority over uninspected vessels.

The Coast Guard's regulation of safety aboard uninspected vessels does not encompass crane safety, the working condition at issue here. *Cf.* 29 C.F.R. § 1926.550 (1985) (OSHA crane equipment regulation). The Coast Guard also has not articulated a policy against regulation of crane equipment.

> In fact, the Coast Guard has historically viewed its authority to regulate uninspected vessels as limited to the regulation of life-saving and fire fighting equipment, back fire flame control, ventilation, the reporting of casualties and the licensing of operators.

*Red Star,* 739 F.2d at 777; *see also* 46 U.S.C.A. §§ 4101–4106 (West Supp.1985); 46 C.F.R. §§ 24.01–1–26.30–10 (1984).[4]

Were we to adopt Norfolk's position, no federal agency would have the authority to regulate the safety of crane equipment aboard uninspected vessels. *Red Star,* 739 F.2d at 788. The result which Norfolk urges us to reach is clearly contrary to the legislative intent of section 4(b)(1). "Congress obviously wanted … health and safety conditions [aboard uninspected vessels] to be regulated … by *some* agency since it took the unusual step of requiring an actual exercise of authority to forestall OSHA coverage." *Southern Pacific,* 539 F.2d at 39 (emphasis in original).

Norfolk relies heavily upon *Donovan v. Texaco, Inc.,* 720 F.2d 825, 826 (5th Cir. 1983), in which the Fifth Circuit held that the Coast Guard regulation and supervision of seamen's working conditions is so comprehensive that it creates "an industry-wide exemption for seamen serving on vessels operating on navigable waters." (Citation omitted). We find *Texaco* distinguishable.[5]

OSHA argued in *Texaco* that its jurisdiction was not preempted because the Coast Guard's regulation of the rights and duties of seamen did not include a specific prohibition against retaliatory discharge of employees. The *Texaco* court rejected this argument on the ground that the Coast Guard's regulatory scheme provided protection parallel to that which the OSHA regulatory scheme provided. The statutes which the court relied upon govern the rights and duties of seamen with regard to such matters as compensation and discharge. They do not relate to working conditions aboard vessels. *See, e.g., Texaco,* 720 F.2d at 828–29.[6] Thus, the court had no occasion to recognize that the Coast Guard's comprehensive regulatory scheme relates primarily to seamen aboard inspected vessels.

The *Texaco* court considered its industry-wide exemption to be consistent with the requirement in *Southern Pacific* that a dominant agency actually exercise its jurisdiction. We do not agree that *Southern Pacific* "envisions that regulation of an industry by the dominant agency may be so general and pervasive as to displace OSHA coverage of it entirely." *Texaco,* 720 F.2d at 826 n. 1.

As we stated in *Southern Pacific,* the effect of section 4(b)(1) turns upon the precise working condition at issue:

[C]omprehensive [dominant agency] treatment of the general problem of … fire protection [for example] will displace all OSHA regulations on fire protection, even if the [dominant agency] activity does not encompass every detail of the OSHA fire protection standards, but [dominant agency] regulation of portable fire extinguishers will not displace OSHA standards on fire alarm signaling systems.

539 F.2d at 391.

We conclude that the Coast Guard's regulation of safety aboard uninspected vessels is so circumscribed that it does not preempt OSHA's jurisdiction over crane safety aboard uninspected vessels,

---

4. The Coast Guard has sought congressional approval to expand its authority to regulate uninspected vessels, but without success. We agree with the Second Circuit that Congress's failure to act "clearly evidences an unwillingness to expand the Coast Guard's authority over the uninspected fleet." *Red Star,* 739 F.2d at 777.

5. *Texaco* cites *Clary v. Ocean Drilling and Exploration Co.,* 609 F.2d 1120 (5th Cir.1980), for the proposition that "OSHA regulations do not apply to working conditions of seamen on vessels in navigation…." 720 F.2d at 826. The regulations at issue in *Clary* did not, however, apply to the special purpose vessel in that case. They applied only to construction work, ship repairing, shipbuilding, shipbreaking, and longshoring. *Clary,* 609 F.2d at 1122. OSHA exercised no jurisdiction which could be preempted. Thus, *Texaco's* reliance upon *Clary* is misplaced.

6. Many of the statutes relied upon in *Texaco* have been repealed and reenacted.

**1532**

such as "Jekyll Island." We reverse the judgment of the district court quashing the inspection warrant and remand the action for further consideration.[7]

REVERSED AND REMANDED.

---

**7.** Norfolk moved this court to strike Attachments "A" and "B" of OSHA's brief. We GRANT the motion on the ground that the documents were not presented to the district court. *Cf.* *Allen v. State of Alabama,* 728 F.2d 1384, 1387 (11th Cir.1984) (appellate court generally does not consider issues not raised before the district court).