742 F.2d 555
 1985 A.M.C. 769, 1984-1985 O.S.H.D. ( 27,245
 Gary Alan KOPCZYNSKI, Plaintiff-Appellee/Cross-Appellant,
v.
THE JACQUELINE, Documentation Number 519060, Her Engine,
Tackle, Appurtenances, etc., In Rem; Seaward Marine
Services, Inc., a California Corporation, Seaward Marine
Services, Inc., a Virginia Corporation, ABC Doe Corporation,
Wendy Webber, Jim Walker and Tim Orsac, individually, In
Personam, Defendants-Appellants/Cross-Appellees.
 Nos. 83-6108, 83-6152.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted July 3, 1984.
Decided Sept. 11, 1984.
 
 Jeffrey A. Kopczynski, Glendale, Cal., Michael J. Movius, Glendale, Cal., for plaintiff-appellee/cross-appellant.
 Graydon S. Staring, Thomas R. Dean, Lillick, McHose, & Charles, San Francisco, Cal., for defendants-appellants/cross-appellees.
 On Appeal from the United States District Court for the Southern District of California.
 Before ANDERSON, TANG and FERGUSON, Circuit Judges.
 J. BLAINE ANDERSON, Circuit Judge:
 
 
 1
 Gary Kopczynski brought an admiralty action against Seaward Marine Services for injury he sustained while employed as a crew member on The Jacqueline. Claims were brought for negligence under the Jones Act, 46 U.S.C. Sec. 688, unseaworthiness, maintenance and cure, and punitive damages. The jury found in Kopczynski's favor on all but the unseaworthiness claim. Seaward appeals claiming that punitive damages are not recoverable under the Jones Act. Kopczynski cross-appeals asserting that his Jones Act award should not have been reduced by the amount of his comparative negligence; the district court should have found The Jacqueline unseaworthy as a matter of law; and attorney's fees should have been awarded as an item of maintenance and cure. We affirm on all issues except the district court's award of punitive damages, which we reverse.
 
 I. BACKGROUND
 
 2
 Kopczynski was employed by Seaward as a "diver/tender" on The Jacqueline. The Jacqueline is a converted World War II landing craft used in connection with ship husbandry, in particular cleaning and maintaining ships' hulls. Kopczynski's duties included underwater inspection and operation of hull scrubbing equipment, assisting other divers, operation of the various specialized machinery on The Jacqueline, and performance of seaman's duties on the vessel such as piloting and maintenance.
 
 
 3
 On August 25, 1981, The Jacqueline was moored at the Shell Fuel Dock in San Diego Harbor. Kopczynski was assisting in refueling operations. This task included emptying 55-gallon drums containing hydraulic oil and other fuel into the ships' tanks. Once empty, the drums were man-handled back onto the dock.
 
 
 4
 On the day of refueling, the tide was exceptionally low. This placed the aft work deck, from which the operation took place, six to eight feet below the dock. Due to the transfer of oil from the drums, oil was on the deck, creating slippery working conditions. Either to off-load a drum or to get up on the dock, Kopczynski stood on the safety railing located four feet above the deck. He slipped, straddled the rail, and injured his back. Using the safety railing to step off of the vessel was a common practice of The Jacqueline's crew.
 
 
 5
 At first being considered a harbor worker, Kopczynski received over $17,000 in longshoreman's benefits over a 10-month period. On February 5, 1982, Kopczynski filed this action. His complaint sought redress based on the maritime rights of seamen, and his workers' compensation benefits were terminated four months later.
 
 
 6
 The trial was held in June and July of 1983. On July 12, the jury returned special verdicts finding Seaward negligent, awarding $450,000 in compensatory damages to Kopczynski after his 35% comparative negligence was taken into account; it awarded $55,301 on the maintenance and cure claim; and it concluded that Seaward had acted wantonly and maliciously and granted $325,000 in punitive damages. The jury did not find the vessel unseaworthy. The court entered judgment accordingly.
 
 II. ANALYSIS
 A. Comparative Negligence
 
 7
 Kopczynski contends that the district court should not have reduced his compensatory damage award under the Jones Act by the amount the jury found him to be comparatively negligent, 35%. We disagree.
 
 The Jones Act provides:
 
 8
 Any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury, and in such action all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply ....
 
 
 9
 46 U.S.C. Sec. 688. The relevant statutes governing personal injury suits by railway employees, and thus incorporated into the Jones Act, are found in the Federal Employers' Liability Act, 45 U.S.C. Secs. 51-60. See, e.g., Nygaard v. Peter Pan Seafoods, Inc., 701 F.2d 77, 79 (9th Cir.1983).
 
 
 10
 The general rule in personal injury actions brought in admiralty (both under the Jones Act and general maritime law) and under the FELA is that contributory negligence is not a complete bar to recovery but it does operate to reduce the amount of the damage award. 45 U.S.C. Sec. 53; see Socony-Vacuum Oil Co. v. Smith, 305 U.S. 424, 428-429, 59 S.Ct. 262, 265, 83 L.Ed. 265 (1939); DuBose v. Matson Navigation Co., 403 F.2d 875, 878 (9th Cir.1968).
 
 
 11
 Section 53 of the FELA also provides that contributory negligence, or more appropriately in today's terms, comparative negligence, may not be considered "in any case where the violation by [the employer] of any statute enacted for the safety of employees contributed to the injury or death of such employee." See Kernan v. American Dredging Co., 355 U.S. 426, 435, 78 S.Ct. 394, 399, 2 L.Ed.2d 382 (1958) (citing Coray v. Southern Pacific Co., 335 U.S. 520, 524, 69 S.Ct. 275, 277, 93 L.Ed. 208 (1949)). Kopczynski argues that Seaward's violation of certain safety regulations contributed to his injury, and therefore his comparative negligence should not have reduced his damage award.
 
 
 12
 Surprisingly, there is little case law construing the effect of Sec. 53 in maritime personal injury actions. In one of the few cases that addressed the issue, the court stated that if a maritime employer violated safety statutes analogous to the Safety Appliances and Boiler Inspection Acts, 45 U.S.C. Secs. 1-43, which clearly apply to Sec. 53's proviso, see Coray, 335 U.S. at 524, 69 S.Ct. at 277, then the seaman's negligence will not reduce the damage award. Neal v. Saga Shipping Co., S.A., 407 F.2d 481, 485-486 (5th Cir.), cert. denied, 395 U.S. 986, 89 S.Ct. 2143, 23 L.Ed.2d 775 (1969). The court concluded, however, that the injured party was a longshoreman to whom the Jones Act did not apply. In another case the court reserved the question because it found no violation of a safety statute occurred.
 
 
 13
 B-R Dredging Co. v. Rodriguez, 564 S.W.2d 693, 695 (Tex.1978). Finding the regulations proffered by Kopczynski to be inapplicable, we also reserve the issue of how and when the violation of a safety statute or regulation might preclude consideration of an injured seaman's comparative negligence in a Jones Act case.
 
 
 14
 Kopczynski argues that Seaward violated two sets of related regulations: the OSHA Shipyard Employment Regulations governing the use of gangways or ladders for access to a vessel, 29 C.F.R. Sec. 1915.74; and the Defense Acquisition Regulations, 32 C.F.R. Sec. 12-501, which provide that the OSHA Shipyard Regulations are applicable to defense contractors.
 
 
 15
 The district court correctly found these regulations do not govern the operation of The Jacqueline. The OSHA Shipyard Employment Regulations were promulgated under the authority of the Occupational Safety and Health Act, 29 U.S.C. Secs. 651-678, and the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. Secs. 901-950.
 
 
 16
 The Occupational Safety and Health Act provides that:
 
 
 17
 Nothing in this chapter shall apply to working conditions of employees with respect to which other Federal agencies ... exercise statutory authority to prescribe or enforce standards or regulations affecting occupational safety or health.
 
 
 18
 29 U.S.C. Sec. 653(b)(1). The Coast Guard is the primary federal agency which exercises authority over the working conditions of seamen. 14 U.S.C. Sec. 2.
 
 
 19
 In turn, the LHWCA's scope is limited. It protects the rights of "employees" which are defined as a:
 
 
 20
 longshoreman or other person engaged in longshoring operations, and any harbor worker including a ship repairman, ship builder, and ship breaker, but such term does not include a master or member of any crew of any vessel, or any person engaged by the master to load or unload or repair any small vessel under 18 tons net.
 
 
 21
 33 U.S.C. Sec. 902(3).
 
 
 22
 The Shipyard Employment Regulations themselves recognize this limited scope:
 
 
 23
 This part does not apply to matters under the control of the United States Coast Guard within the scope of Title 52 of the Revised Statutes and Acts supplementary or amendatory thereto ... including, but not restricted to, the master, ship's officer, crew members, design, construction and maintenance of the vessel, its gear and equipment....
 
 
 24
 29 C.F.R. Sec. 1915.2(b).
 
 
 25
 Kopczynski is a crew member of The Jacqueline and brought this action based on his status as a seaman. The regulations governing the safety of harbor workers and longshoremen do not apply. See Donovan v. Texaco, Inc. 720 F.2d 825, 826-829 (5th Cir.1983); Taylor v. Moore-McCormack Lines, Inc., 621 F.2d 88, 92-93 (4th Cir.1980); Clary v. Ocean Drilling & Exploration Co., 609 F.2d 1120, 1122 (5th Cir.1980).
 
 B. Maintenance and Cure
 
 26
 Kopczynski contends that as a matter of law the district court should have granted him attorney's fees in conjunction with his maintenance and cure award. We are not persuaded.
 
 
 27
 Maintenance and cure is the obligation of a shipowner to care for a seaman injured during the course of maritime employment. See Vaughan v. Atkinson, 369 U.S. 527, 531-532, 82 S.Ct. 997, 999-1000, 8 L.Ed.2d 88 (1962); Crooks v. United States, 459 F.2d 631, 632-633 (9th Cir.1972). In Vaughan, the Supreme Court held that attorney's fees incurred in order to secure a maintenance and cure award may be recovered in addition to the usual items such as medical care, food, and lodging. Here, the district court followed the approach of the circuit courts that have construed the scope of Vaughan and interpret it to allow attorney's fees only when the failure to provide maintenance and cure was arbitrary, recalcitrant or unreasonable. Icandela v. American Dredging Co., 659 F.2d 11, 15 (2d Cir.1981); Gaspard v. Taylor Diving & Salvage Co., 649 F.2d 372, 375 (5th Cir.1981), cert. denied, 455 U.S. 907, 102 S.Ct. 1252, 71 L.Ed.2d 445 (1982); see Vaughan, 369 U.S. at 530-531, 82 S.Ct. at 999. We approve.
 
 
 28
 In an instruction and special interrogatory, the district court requested the jury to decide whether Seaward was "willful and arbitrary in failing to pay maintenance and cure," to which it responded in the answer to the interrogatory, "No." We see no reason to disturb that finding. Kopczynski originally received workman's compensation benefits as a longshoreman or harbor worker. Four months after Kopczynski filed this action as a seaman under the Jones Act, the benefits were terminated. The jury could have reasonably concluded that the failure to provide further maintenance and cure once the benefits were terminated was not unreasonable due to the uncertain nature of Kopczynski's status.
 
 C. Unseaworthiness
 
 29
 In its answer to a special interrogatory, the jury found that The Jacqueline was not unseaworthy. Kopczynski contends that the district court should have directed a verdict in his favor on this issue; the jury instructions regarding the law of unseaworthiness were inadequate; and the district court erroneously excluded evidence pertaining to this claim. We find these contentions to be without merit.
 
 
 30
 At the outset, we note that Kopczynski is not entitled to independent recoveries for his negligence and unseaworthiness claims. 1B Benedict on Admiralty, Sec. 21 at 3-3 (1983). Comparative negligence principles apply to each theory, id., Sec. 25 at 3-92, so his compensatory remedy would be the same under either claim. There may, however, be a distinction between the two theories in the area of punitive damages, as discussed in the next section. We therefore discuss Kopczynski's argument on this issue, even though his claim is under general principles moot because Seaward does not question the propriety of Kopczynski's compensatory damage award.
 
 
 31
 Kopczynski failed to move for judgment notwithstanding the verdict, so we will not pass on the question whether a directed verdict was mandated by the evidence. 5A Moore's Federal Practice, p 50.12 at 50-108 (1984).
 
 
 32
 Kopczynski's attack on the jury instructions consists of the conclusory statement that they were "inadequate" for such a complex area of the law. First, Kopczynski did not object to the court's failure to give the instructions he proposed. He therefore lost his right to raise this issue on appeal. Fed.R.Civ.P. 51; see Robert's Waikiki U-Drive, Inc. v. Budget Rent-A-Car, Inc., 732 F.2d 1403, 1410 (9th Cir.1984). Second, Kopczynski's conclusory contention of "inadequacy" does not provide us with a sufficient basis on which to review the instructions. Objections to jury instructions must be specific, see Fed.R.Civ.P. 51, and so should claims of error in that respect be on appeal.
 
 
 33
 Last, Kopczynski argues that the district court erroneously excluded evidence of the regulations discussed earlier. As stated, they are not applicable.
 
 D. Punitive Damages
 
 34
 On cross-appeal, Seaward contends that as a matter of law the district court should not have awarded punitive damages. This presents a novel question in this circuit and we agree with Seaward that such damages are not recoverable in this case.
 
 
 35
 Initially, it must be emphasized that we are presented only with the question whether punitive damages are recoverable under the Jones Act. As just discussed, the jury did not find that The Jacqueline was unseaworthy under general maritime law and we see no reason to disturb that conclusion. Therefore, we offer no opinion on whether punitive damages may be recovered on an unseaworthiness claim. See Dyer v. Merry Shipping Co., 650 F.2d 622 (5th Cir.1981) (Fifth Circuit concluding that a finding of unseaworthiness may support a punitive damage award); Holmes v. J. Ray McDermott & Co., 734 F.2d 1110, 1118 (5th Cir.1984) (willful failure to pay maintenance and cure can support punitive damage award); cf. Note, Punitive Damages in Admiralty, 18 Hastings L.J. 995, 1002 (1967) (punitive damages based on unseaworthiness claim not available).
 
 
 36
 We have discussed how the Jones Act incorporates by reference the standards of the FELA. Prior to enactment of the Jones Act in 1920, it had been established that only compensatory damages were available in FELA actions. Michigan Central Railroad Co. v. Vreeland, 227 U.S. 59, 71-72, 33 S.Ct. 192, 196-197, 57 L.Ed. 417 (1913); Gulf, Colorado and Santa Fe Railway Co. v. McGinnis, 228 U.S. 173, 175-176, 33 S.Ct. 426, 427, 57 L.Ed. 785 (1913); see Kozar v. Chesapeake and Ohio Railway Co., 449 F.2d 1238, 1240-1243 (6th Cir.1971).
 
 
 37
 We find this limitation of recovery applicable to this case. In Merry Shipping, the Fifth Circuit recognized that punitive damages may not be available under the Jones Act because under it recovery is limited to "pecuniary" losses, even though the court did hold that an unseaworthiness claim may support such an award. 650 F.2d at 626. This circuit also limits Jones Act damage awards to pecuniary losses. Nygaard v. Peter Pan Seafoods, Inc., 701 F.2d 77, 80 (9th Cir.1983). Punitive damages are non-pecuniary. Under our precedent, therefore, they may not be awarded on a claim of negligence based on the Jones Act. Any argument that they should be available ought to be addressed to Congress. See id. (citing DoCarmo v. F.V. Pilgrim I. Corp., 612 F.2d 11, 13 n. 3 (1st Cir.1979), cert. denied, 446 U.S. 956, 100 S.Ct. 2928, 64 L.Ed.2d 815 (1980)). In reaching this result, we find support in a persuasive article discussing the legislative history and case law of the Jones Act. Dahlquist, Punitive Damages Under the Jones Act, 6 Maritime Lawyer 1-36 (1981).
 
 III. CONCLUSION
 
 38
 We affirm the judgment in all respects except the punitive damage award, which we reverse.
 
 
 39
 AFFIRMED IN PART; REVERSED and REMANDED IN PART.