James P. BROOKER, Plaintiff,

v.

A. Roy CLEGHORN dba Pride of Maui;
John Does 1–15, Defendants.

A. Roy CLEGHORN dba Pride of
Maui, Third–Party Plaintiff,

v.

Jamie DANCIL, Third–Party Defendant.

Jamie DANCIL, Third–Party
Defendant/Counterclaim
Plaintiff,

v.

A. Roy CLEGHORN dba Pride of Maui,
Third–Party Plaintiff/Counterclaim
Defendant.

Civ. No. 93–00137 DAE.

United States District Court,
D. Hawai'i.

Aug. 26, 1994.

Christopher P. McKenzie, Christopher P. McKenzie, McKenzie Trecker & Fritz, Honolulu, HI, for James P. Brooker.

Robert G. Frame, John O'Kane, Jr., Alcantara & Frame, Honolulu, HI, for A. Roy Cleghorn.

Christopher S. Bouslog, Bickerton Ramos–Saunders Dang & Bouslog, Honolulu, HI, for Jamie Dancil.

*ORDER GRANTING PLAINTIFF'S MOTION FOR RECONSIDERATION AND GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT*

DAVID ALAN EZRA, District Judge.

On February 17, 1993, Plaintiff filed his Complaint alleging negligence under the Jones Act, 46 U.S.C. § 688, against Cleghorn. On August 1, 1994, this court heard Plaintiff's Motion for Partial Summary Judgment, concerning Plaintiff's contributory negligence under § 53 of the Federal Employer's Liability Act. 45 U.S.C. § 53. On August 5, 1994, the court issued its Order Denying Plaintiff's Motion for Partial Summary Judgment ("August 5 Order"). On August 12, 1994, Plaintiff filed this Motion for Reconsideration, asserting that this court erred in denying his Motion for Partial Summary Judgment. According to Local Rule 220–4, oppositions were due within eleven days of that date. However, as of the date of this Order, no opposition has been filed. After carefully reviewing the facts and law involved with its previous ruling, the court GRANTS Plaintiff's Motion for Reconsideration and GRANTS the Motion for Partial Summary Judgment.

## BACKGROUND

Plaintiff James P. Brooker was employed as a mate/relief captain on the Pride of Maui ("POM" or "Defendant"), a sixty-five foot charter vessel operating out of Maalaea Harbor, Maui. Because its business included transporting diving tour groups for hire, the boat was certified and inspected by the U.S. Coast Guard. Molokini crater was a frequent mooring site for POM's diving tours. POM's captain, Mark Davis, decided in 1992 to modify a permanent off-shore mooring at Molokini.

In December of 1992, Davis hired an independent diver, Jamie Dancil, to assist in modifying the underwater mooring at Molokini. Plaintiff, a certified SCUBA diver who had engaged in recreational diving in the early 1970's, was assigned by Davis to assist Dancil in the mooring activity.

On December 24, 1992, Davis decided to take the vessel to Molokini to complete the underwater mooring work. There were no passengers on board the vessel at that time. On board were Davis, Plaintiff, Dancil, and Dancil's cousin. Once at the crater, Plaintiff made three dives to 125 feet within a period of a few hours. Plaintiff did not make any "safety stops" to permit decompression. Upon surfacing from the third dive, Plaintiff began to experience symptoms consistent with decompression sickness (the Bends). Plaintiff now suffers from residual physical impairment, numbness in his legs and spine, spinal pain, and loss of balance.

## STANDARD OF REVIEW

### I. Motion for Reconsideration

■ The disposition of a motion for reconsideration is within the discretion of the district court and will not be reversed absent an abuse of discretion. *Plotkin v. Pacific Tel. & Tel. Co.,* 688 F.2d 1291, 1292 (9th Cir.1982). There is a "compelling interest in the finality of judgments which should not be lightly disregarded." *Rodgers v. Watt,* 722 F.2d 456, 459 (9th Cir.1983).

■ It is well settled in the Ninth Circuit that a successful motion for reconsideration must accomplish two goals. First, a motion for reconsideration must demonstrate some reason why the court should reconsider its prior decision. Second, a motion for reconsideration must set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision. *Great Hawaiian Financial Corp. v. Aiu,* 116 F.R.D. 612, 616 (D. Hawaii 1987) (citations omitted). Courts have established only three grounds justifying reconsideration: (1) an intervening change in controlling law; (2) the discovery of new evidence not previously available; and (3) the need to correct clear or manifest error in law or fact, to prevent manifest injustice. *Id.* The District of Hawaii has implemented these standards in Local Rule 220–10.

### II. Motion for Summary Judgment

Rule 56(c) provides that summary judgment shall be entered when:

> [T]he pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.

Fed.R.Civ.P. 56(c). The moving party has the initial burden of demonstrating for the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (*citing Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)). However, the moving party need not produce evidence negating the existence of an element for which the opposing party will bear the burden of proof at trial. *Id.* at 322, 106 S.Ct. at 2552.

Once the movant has met its burden, the opposing party has the affirmative burden of coming forward with specific facts evidencing a need for trial. Fed.R.Civ.P. 56(e). The opposing party cannot stand on its pleadings, nor simply assert that it will be able to discredit the movant's evidence at trial. *See T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir. 1987); Fed.R.Civ.P. 56(e). There is no genuine issue of fact "where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Matsushita*

*Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986) (citation omitted).

At the summary judgment stage, this court may not make credibility determinations or weigh conflicting evidence. *Musick v. Burke,* 913 F.2d 1390, 1394 (9th Cir. 1990). The standard for determining a motion for summary judgment is the same standard used to determine a motion for directed verdict: does the evidence present a sufficient disagreement to require submission to a jury or is it so one-sided that one party must prevail as a matter of law. *Id.* (citation omitted).

## DISCUSSION

Plaintiff's cause of action is based on the Jones Act, codified as 46 U.S.C. § 688. The Jones Act provides that:

[a]ny seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury, and in such action all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply.

46 U.S.C. § 688.

The Jones Act incorporates the statutes governing personal injury suits by railway employees, codified in the Federal Employers' Liability Act, 45 U.S.C. § 51–60 ("FELA"). *Kopczynski v. The Jacqueline,* 742 F.2d 555, 558 (9th Cir.1984); *see also Nygaard v. Peter Pan Seafoods, Inc.,* 701 F.2d 77, 79 (9th Cir.1983).

The general rule in personal injury actions brought under FELA, and thus under the Jones Act, is that "contributory negligence is not a complete bar to recovery but it does operate to reduce the amount of the damage award." *Kopczynski,* 742 F.2d at 558; 45 U.S.C. § 53; *Bernard v. Maersk Lines, Ltd.,* 22 F.3d 903, 906 (9th Cir.1994) ("[C]ontributory negligence and assumption of the risk are not bars to a seaman's recovery against his employer for personal injury, but serve only to mitigate his damages.").

However, "[s]ection 53 of the FELA also provides that contributory negligence ... may not be considered in any case where the violation by [the employer] of any statute enacted for the safety of employees contributed to the injury or death of such employee." *Kopczynski,* 742 F.2d at 558 (citations omitted).

Plaintiff has asked the court to grant him Partial Summary Judgment as to the issue of contributory negligence, pursuant to the above-cited provision. For Plaintiff to succeed on Motion for Partial Summary Judgment, Plaintiff must prove (1) that a statute enacted for the safety of employees is applicable in this case, (2) that Defendant violated that statute, and (3) that such violation of the statute contributed to Plaintiff's injuries.

In its August 5 Order, this court found the following: (1) the Coast Guard Regulations were applicable; (2) the diving operations violated the Coast Guard Regulations; (3) these violations contributed to Plaintiff's injuries; (4) Dancil was responsible for keeping Plaintiff safe during the diving operations; (5) Dancil's negligence could not be imputed to POM because the diving operations constituted "maintenance" and were therefore not part of the ship's regular operational activities. Plaintiff's Motion for Reconsideration focuses on the final prong of the court's analysis: he claims that maintenance is not automatically excluded from an employer's operational activities, that there is no requirement that the operational activities be "regular" in order to trigger the Jones Act protections, and finally that the diving operations were not maintenance work.

This court has previously stated, "[I]f Dancil is found to be an agent of Defendant, Dancil's violations of the Coast Guard Regulations could be charged to Defendant. *Hopson v. Texaco, Inc.,* 383 U.S. 262, 86 S.Ct. 765, 15 L.Ed.2d 740 (1966)." August 5 Order at 10. It has set forth the following law to guide its analysis:

"The Jones Act incorporates the standards of the Federal Employers' Liability Act, as amended, which renders an employer liable for the injuries negligently inflicted on its employees by its 'officers, agents, or employees.'" *Hopson,* 383 U.S. at 263–64,

86 S.Ct. at 766 (1966); *see also* 45 U.S.C. § 51. The Supreme Court has established the following standard for determining agency in the FELA context: "When [an] . . . employee's injury is caused in whole or in part by the fault of others performing, under contract, operational activities of his employer, such others are 'agents' of the employer within the meaning of § 1 of FELA." *Sinkler v. Missouri Pac. R. Co.*, 356 U.S. 326, 331, 78 S.Ct. 758, 763, 2 L.Ed.2d 799 (1958).

August 5 Order at 10–11.

After describing the facts of the *Hopson*, the court discerned the following two-part test to guide its agency analysis: "Under *Hopson*, it seems clear that the two key factors in the agency analysis are: (1) whether the ship delegated one of its duties to an outsider, or whether that duty rested primarily and originally with the outsider, and (2) whether the accident occurred in the course of the ship's regular operational activity." August 5 Order at 11–12. The court found that Dancil was charged with keeping Plaintiff safe during the diving and that, because the diving activities were maintenance work, they did not constitute regular operational activity of POM. As a result, Dancil's negligence in supervising the dives could not be imputed to POM. In support of this conclusion, the court cited *Ward v. Atlantic Coast Line R. Co.*, 362 U.S. 396, 396–99, 80 S.Ct. 789, 790–91, 4 L.Ed.2d 820 (1960).

Upon a closer reading of the case law and careful consideration of the concerns raised by Plaintiff, the court now finds its earlier conclusion as to the "operational activity" prong to be erroneous. For that reason, the court GRANTS the Motion for Reconsideration.

In *Hopson*, the Supreme Court expressly adopted the liberal interpretation of agency principles previously used in FELA cases:

We noted in *Sinkler v. Missouri Pac. R. Co.*, 356 U.S. 326, 78 S.Ct. 758, 2 L.Ed.2d 799 (1958) that [FELA] was an avowed departure from the rules of the common law which, recognizing the cost of human injury, an inescapable expense of railroading, undertook to adjust that expense equitably between the worker and the carrier.

In order to give an accommodating scope to the word "agents", we concluded that when an employee's injury is caused in whole or in part by the fault of others performing, under contract, operational activities of his employer, such others are 'agents' of the employer within the meaning of § 1 of FELA.

We think those principles apply with equal force here. . . . This is so because, as we said in *Sinkler*, justice demands that one who gives his labor to the furtherance of an enterprise should be assured that all combining their exertions with him in the common pursuit will conduct themselves in all respects with sufficient care that his safety while doing his part will not be endangered.

383 U.S. at 263, 86 S.Ct. at 766 (*citing Sinkler*, 356 U.S. at 329, 330–31, 78 S.Ct. at 761, 762–63) (internal quotations and ellipses omitted).

Applying these principles, the *Hopson* Court found that a ship's transport, via taxi, of two ill seamen was "a vital part of the ship's total operations[,]" because the ship could neither sail without the two sailors nor lawfully discharge them without taking them to the consulate. *Id.* Similarly, in *Sinkler*, the Court held that a railroad's "switching operations", although under the control of a third party's switching crews, "were being handled to further the task of the [railroad's] enterprise." 356 U.S. at 331, 78 S.Ct. at 762. The corporate autonomy of the third party and its "freedom from detailed supervision of its operations by [the railroad] are irrelevant inasmuch as the switching crew of the [third party] at the moment of the collision in the station was engaged in furthering the operational activities of [the railroad.]" *Id.* In contrast, the *Ward* Court concluded that, where an outside company hired the railroad crew to perform maintenance work on a track which was located entirely on its private property and was used only by the outside company, "it cannot be said under the proofs that the [outside company] was 'engaged in furthering the operational activi-

ties of [the railroad].'" 362 U.S. at 397, 80 S.Ct. at 791.[1]

■ The above authorities indicate that, where the employer's crewmen are supervised by an independent contractor, who has been hired by the employer to do work which furthers the employer's enterprise or operational activities,[2] the liability of the independent contractor is imputed to the employer. The employer is not, however, responsible for injuries sustained by one of his employees in the course of work performed for an independent contractor in furtherance of the contractor's business or interests. These guidelines are fully consistent with the principles enunciated by the Supreme Court: "an accommodating scope ... of the word 'agents'" is necessary "to give vitality to the standard governing the liability of carriers to their workers injured on the job." *Sinkler*, 356 U.S. at 330–31, 78 S.Ct. at 762–63 (*citing Kernan v. American Dredging Co.*, 355 U.S. 426, 431–32, 78 S.Ct. 394, 397–98, 2 L.Ed.2d 382 (1958)).

■ In light of these principles, there can be no doubt that the diving operations supervised by Dancil furthered POM's business enterprise. Indeed, POM wanted to build this off-shore mooring site at Molokini crater in order to increase the capacity of the dive site, which would accordingly increase POM's business. Defendant hired Dancil to assist with the construction and lent Plaintiff to Dancil to aid with this work. Plaintiff was paid by POM for his time, and there is no evidence that Dancil required Plaintiff to do any work underwater apart from the POM work. In short, because Plaintiff was injured while he and Dancil were working for POM, in furtherance of POM's operational activities, POM is responsible for Dancil's statutory and regulatory violations.[3]

Having found that Plaintiff has met his burden with respect to proving Defendant's violation of the regulations, the court also amends its conclusion as to Part III (causation) of the August 5 Order.

■ The burden to establish legal causation under the Jones Act is minimal. *Nelsen v. Research Corp. of University of Hawaii*, 805 F.Supp. 837, 848 (D.Hawaii 1992). To determine causation, the court must simply inquire "whether, with reason, the conclusion may be drawn that negligence of the employer played any part at all in the injury" of the employee. *Lies v. Farrell Lines, Inc.*, 641 F.2d 765, 771 (9th Cir.1981). Thus, "[i]f the employer's negligent act or omission played a part, however, slight, in bringing about the injury, the employer is liable." *Nelsen*, 805 F.Supp. at 848. Courts recognize that it does not matter that the evidence points to other causes for the injury. *Lies*, 641 F.2d at 771; *Nelsen*, 805 F.Supp. at 848–49 (stating that plaintiff need only show that the employer's negligence was a contributing cause as opposed to the main, sole or significant cause).

■ Here, Plaintiff has provided sufficient evidence [4] to prove that the three dives, as directed by Dancil, caused Plaintiff's injuries. Defendant does not dispute this evidence, and it has already been established that POM, through Dancil, violated Coast Guard Regulations for diving safety. This court has no difficulty finding that the statutory violations of POM played some part in causing Plaintiff's injuries. Plaintiff has thus met the minimal causation burden of the Jones Act.

Having examined the facts and law relevant to the three-part violation of statute test, and having concluded that Plaintiff has

---

1. This court's earlier focus on the maintenance nature of the work performed by the crew, rather than on the nature of the relationship between the Turpentine Company and the crew, was erroneous.

2. The court notes that, in the August 5 Order, it had used the word "regular" to modify the phrase "operational activity." There is, however, no case law requirement for "regularity" in the operations at issue; the court's previous use of the word "regular" was casual, not legal.

3. Although plaintiff contends that the court also erred in finding that the work performed at the dive site amounted to maintenance, the court need not decide this issue, given its reconsideration of the applicable law.

4. Plaintiff has submitted the Affidavit of Doctor Latisha Smith, his treating physician. Dr. Smith states that, in her opinion, plaintiff's injuries were caused "by three 125' dives with no decompression stops."

satisfied his burden as to all three parts, the court finds that Plaintiff should be exempted, as a matter of law, from the contributory negligence doctrine.

## CONCLUSION

For the reasons stated above, the court GRANTS Plaintiff's Motion for Reconsideration and GRANTS Plaintiff's Motion for Partial Summary Judgment.

IT IS SO ORDERED.