160 F.3d 1239
 1999 A.M.C. 236, 18 O.S.H. Cas. (BNA) 1545,
1998 O.S.H.D. (CCH) P 31,703,
98 Daily Journal D.A.R. 11,970
 Alexis M. HERMAN, Secretary of Labor, U.S. Department of
Labor, Petitioner,
v.
TIDEWATER PACIFIC, INC.; Occupational Safety & Health
Review Commission, Respondents.
TIDEWATER PACIFIC, INC., Petitioner,
v.
Alexis M. HERMAN, Secretary of Labor, U.S. Department of
Labor; Occupational Safety & Health Review
Commission, Respondents.
 Nos. 97-70664, 97-71105.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Sept. 15, 1998.
Decided Nov. 24, 1998.
 
 Ann Rosenthal and Ronald J. Gottlieb, United States Department of Labor, Washington, D.C., for the petitioner-cross-respondent.
 Thomas H. Kiggans, Phelps Dunbar, Baton Rouge, Louisiana, for the respondent-cross-petitioner.
 Petitions for Review of a Final Order of the Occupational Safety and Health Review Commission. OSHRC No. 93-2529.
 Before: WALLACE and KOZINSKI, Circuit Judges, EZRA,* District Judge.
 WALLACE, Circuit Judge:
 
 
 1
 The Secretary of Labor (Secretary) petitions for review of an Occupational Safety and Health Review Commission (Commission) order vacating in part a recordkeeping citation issued by the Secretary against Tidewater Pacific (Tidewater). Tidewater also petitions for review of the order, challenging the portion of the order that upheld a citation for substantive violations and the second part of the recordkeeping citation. The Commission had jurisdiction pursuant to 29 U.S.C. § 659(c). We have jurisdiction to hear the Secretary's timely filed petition pursuant to 29 U.S.C. § 660(b). Tidewater's timely filed petition was properly transferred to us by the Fifth Circuit pursuant to 28 U.S.C. § 2112, and we have jurisdiction pursuant to 29 U.S.C. § 660(a). We grant the Secretary's petition and deny Tidewater's.
 
 
 2
 * This case presents us with the issue of the extent of the Secretary's jurisdiction to enforce regulations, promulgated by the Occupational Safety and Health Administration (OSHA) pursuant to the Occupational Safety and Health Act (Act), on board "uninspected" vessels regulated by the Coast Guard.
 
 
 3
 Following an inspection of the M/V Dr. Jack, the Secretary issued two citations for violations of the Act and its implementing regulations. The Dr. Jack is an oceangoing tug operated by Tidewater. At the time the citations were issued, it was working within United States territorial waters off the coast of Alaska. The first citation was for substantive safety violations regarding confined space entry procedures, machine guarding, and blood-borne pathogen exposure control plans. See 29 C.F.R. §§ 1910.146(c)(4), 1910.215(a)(4), 1910.1030(c)(1)(i). The other citation concerned Tidewater's failure to keep a log of injuries and illnesses as required by 29 C.F.R. § 1904.2(a).
 
 
 4
 Tidewater contested the citations, asserting that the Act is preempted by Coast Guard regulation of vessels such as the Dr. Jack. The administrative law judge (ALJ) disagreed and upheld the citations. The parties then entered into a stipulation that gave consent to the entry of a final order by the ALJ, reserved the parties' rights to appeal, set forth the amount of fines to be paid, and required Tidewater to post certain materials. Tidewater appealed the ALJ's decision to the Commission.
 
 
 5
 Before the Commission, the Coast Guard filed an amicus brief in which it, in the Commission's words, "unequivocally disclaims comprehensive regulation of uninspected vessels generally, regulation of the cited conditions, and statutory authority to promulgate such regulations." With this before it, the Commission affirmed with one exception: it agreed with Tidewater that the Secretary lacked jurisdiction to issue the recordkeeping citation with respect to injuries. The Commission, therefore, vacated that citation with respect to injury recording and reduced the $450 penalty by one half. Tidewater paid this reduced penalty and complied with the posting requirements in the parties' stipulation.
 
 
 6
 "We must uphold a decision of the [Commission] unless it is arbitrary and capricious, not in accordance with the law, or in excess of the authority granted by [the Act]." Loomis Cabinet Co. v. Occupational Safety & Health Review Comm'n, 20 F.3d 938, 941 (9th Cir.1994). While the proper interpretation of a statute is a question of law reviewed de novo, Alaska Wildlife Alliance v. Jensen, 108 F.3d 1065, 1069 (9th Cir.1997), the court must give deference to the agency's interpretation of statutes that it administers, Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842-43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). Where the interpretations of the Secretary and the Commission are in conflict, however, we must defer to the Secretary's reasonable interpretation. Martin v. Occupational Safety and Health Review Com'n, 499 U.S. 144, 157-58, 111 S.Ct. 1171, 113 L.Ed.2d 117 (1991) (Martin ).
 
 II
 
 7
 The Act gives the Secretary jurisdiction to regulate occupational health and safety standards "with respect to employment performed in a workplace in a State." 29 U.S.C. § 653(a). This jurisdiction is limited, however, by section 4(b)(1) of the Act, which provides that the Act does not "apply to working conditions of employees with respect to which other Federal agencies ... exercise statutory authority to prescribe or enforce standards or regulations affecting occupational safety or health." 29 U.S.C. § 653(b)(1). The initial question for both citations, therefore, is whether an uninspected vessel operating in United States territorial waters is a "workplace in a State." If this is answered affirmatively, the specific question for the substantive citation is whether the Coast Guard has "exercised" statutory authority over the "working conditions" on board uninspected vessels.
 
 
 8
 With respect to the Secretary's recordkeeping requirements, section 8(d) of the Act requires that "[u]nnecessary duplication of efforts in obtaining information shall be reduced to the maximum extent feasible." 29 U.S.C. § 657(d). The issue as to this citation, therefore, is whether the Secretary's recordkeeping authority is limited either because Coast Guard recordkeeping regulations are an exercise of authority over working conditions or because it produces an "unnecessary duplication of efforts."
 
 
 9
 Therefore, we must analyze whether the Secretary has jurisdiction to issue both citations and whether the recordkeeping requirement produces an "unnecessary duplication of efforts."
 
 III
 
 10
 We must first examine the Coast Guard's regulation of uninspected vessels. The Coast Guard has the general authority to "promulgate and enforce regulations for the promotion of safety of life and property on and under the high seas and waters subject to the jurisdiction of the United States covering all matters not specifically delegated by law to some other executive department." 14 U.S.C. § 2. For purposes of this regulation, there are two types of vessels: "inspected" and "uninspected." 46 U.S.C. §§ 2101(43), 3301. Inspected vessels are subject to comprehensive regulation, see, e.g., 46 U.S.C. § 3306, and the Coast Guard regularly inspects such vessels to ensure compliance, 46 U.S.C. §§ 3305, 3307, 3308.
 
 
 11
 The Dr. Jack, however, is an uninspected vessel. While not subject to the regulations specific to inspected vessels, uninspected vessels are nonetheless subject to a number of Coast Guard safety-related regulations. In particular, 46 U.S.C. §§ 4101-4106 and 46 C.F.R. pts. 24-28 deal specifically with uninspected vessels. Among other things, these provisions enumerate certain required safety equipment such as fire extinguishers, lifesaving equipment, emergency radio beacons, and ventilation for tanks and engine spaces. See 46 U.S.C. § 4102; 46 C.F.R. pt. 25.
 
 
 12
 Uninspected vessels are also subject to other requirements generally applicable to the type of vessel they are. For example, the Dr. Jack is a "vessel of the United States" and a "towing vessel." See 46 U.S.C. §§ 2101(40), 2101(46). It is therefore subject to the seaworthiness provisions of 46 U.S.C. §§ 10901-10908. These provisions apply to the vessel's "crew, hull, equipment, tackle, machinery, apparel, furniture, [and] provisions of food or water." 46 U.S.C. § 10902(a)(1). The statutes create a means of quasi-self-regulation: members of the crew are empowered to initiate a court-supervised inspection of conditions they believe are unfit. See id. Three court-appointed marine surveyors complete this inspection, and the district court determines whether the vessel is fit for voyage. 46 U.S.C. § 10903. In addition, the doctrine of seaworthiness gives a private right of action to a seaman who is injured by equipment that is not fit for its intended use. Ribitzki v. Canmar Reading & Bates, Ltd., 111 F.3d 658, 664 (9th Cir.1997).
 
 
 13
 Additionally, an uninspected vessel's status as a United States flag vessel may subject it to further regulation depending on the type of service in which it engages. Uninspected vessels may therefore be subject to Coast Guard regulations concerning load lines, marine engineering, electrical engineering, and dangerous cargoes. 46 C.F.R. ch. I, subchs. E, F, J, N. For example, as a towing vessel, the Dr. Jack is subject to the load line regulations.
 
 
 14
 Not only are uninspected vessels subject to these specific and general regulations, in this case the entire crew was subject to licensing and certification. See 46 U.S.C. §§ 7101-7114; 46 C.F.R. pts. 10-16. The certification requirements for uninspected towing vessels prescribe that crew members be proficient in certain safety-related tasks such as fire fighting and first aid. See 46 C.F.R. § 10.203, Table 10.203. At the time the Secretary issued the citations in this case, the Dr. Jack was operating in Valdez, Alaska and was subject to inspection by the Coast Guard Marine Safety Office in Valdez for compliance with these and other general regulations.
 
 
 15
 More to the point, the Coast Guard also requires all of its regulated vessels to report marine casualties, which is defined to include death or serious injury to an individual. 46 U.S.C. § 6101. Thus, the owner, agent, master, or person in charge of an uninspected vessel must file a written report of all marine casualties with the Coast Guard. 46 C.F.R. § 4.05-10. The purpose of this reporting requirement is to allow the Coast Guard to investigate the cause of the casualty; to ascertain whether misconduct, incompetence, negligence, unskillfulness, or willful violation of law contributed to that cause; and to determine whether new laws or regulations are needed to prevent a recurrence of the casualty. 46 U.S.C. § 6301.
 
 IV
 
 16
 Before we examine the interplay of these Coast Guard regulations with those of OSHA, a threshold question is whether the Secretary has jurisdiction over seagoing vessels operating in territorial waters, ignoring for the present any preemptive Coast Guard regulation. The Commission concluded that the Secretary does have jurisdiction over such vessels. The Secretary urges us to hold that such vessels constitute a "workplace in a State" because territorial waters are within the boundaries of the adjacent State.
 
 
 17
 The Submerged Lands Act defines the seaward boundaries of coastal States to be "a line three geographical miles distant from its coast line." 43 U.S.C. § 1312. Tidewater contends, however, that because the federal government reserved the power to regulate and control the territorial waters, see United States v. Louisiana, 363 U.S. 1, 8-10, 121, 80 S.Ct. 961, 4 L.Ed.2d 1025 (1960); 33 C.F.R. §§ 2.05-5, 2.05-30 (defining "territorial seas" subject to federal regulation), the Act gives only the submerged lands, not the territorial waters, to the States. This novel interpretation of the Submerged Lands Act is in direct conflict with the later enacted Alaska Statehood Act, which defined Alaska as "all the territory, together with the territorial waters appurtenant thereto, now included in the Territory of Alaska." Pub.L. No. 85-508, section 2, 72 Stat. 339 (1958); see also Amoco Prod. Co. v. Village of Gambell, 480 U.S. 531, 547, 107 S.Ct. 1396, 94 L.Ed.2d 542 (1987). And it would call into doubt the States' longstanding police power over these waters. See, e.g., Askew v. American Waterways Operators, Inc., 411 U.S. 325, 328, 93 S.Ct. 1590, 36 L.Ed.2d 280 (1973) (recognizing the States' police power to regulate oil spills in coastal waters). We conclude that the waters at issue here are within the boundaries of Alaska.
 
 
 18
 We recognize that our holding conflicts with the Fifth Circuit's dicta in Donovan v. Texaco Inc., 720 F.2d 825 (5th Cir.1983) (Donovan ), which states that the Act does not apply to vessels that steam "in and out of [the Act's] coverage." Id. at 829. While vessels operating on the high seas are certainly outside of the Act's coverage, the plain language of the Act includes all workplaces "in a State." The waters involved here are by definition within the State of Alaska. We cannot ignore the language of the statute even if we were to agree with the Fifth Circuit that this creates "a disastrous and unworkable rule: one that would require ... vessels to paint all stumbling hazards yellow as they enter port." Id.
 
 V
 
 19
 Having concluded that the Act applies to vessels operating in the waters at issue here, we next turn to the question of whether the Secretary's jurisdiction to issue the substantive citation was preempted by Coast Guard regulation. The Coast Guard has not issued specific regulations governing the subjects of the Secretary's citation. The question, thus, is whether the regulations outlined above are a sufficient exercise of authority to preempt the Secretary's jurisdiction.
 
 
 20
 We have not squarely addressed the preemptive workings of section 4(b)(1). We have stated that "a determination of [§ 4(b)(1) ] preemption requires an inquiry into complex issues of law and fact." Marshall v. Burlington Northern, Inc., 595 F.2d 511, 513 (9th Cir.1979), quoting Marshall v. Northwest Orient Airlines, Inc., 574 F.2d 119, 122 (2d Cir.1978) (internal quotation marks omitted). In Kopczynski v. The Jacqueline, 742 F.2d 555 (9th Cir.1984), we held that Act regulations concerning longshoremen did not apply to a crew member who brought an action "based on his status as a seaman." Id. at 559. In coming to this conclusion, we stated that "[t]he Coast Guard is the primary federal agency which exercises authority over the working conditions of seamen." Id. The regulations in Kopczynski, however, did not apply to the plaintiff because of his status, not because of Coast Guard regulation. Id. Kopczynski, therefore, is not particularly helpful in deciding the case before us.
 
 
 21
 This being the case, we must turn to sources outside of our circuit law to answer the question of whether the Coast Guard has "exercised" statutory authority over the "working conditions" on board uninspected vessels. Unfortunately, that effort does not provide us with a clear answer.
 
 
 22
 The Commission itself has not been consistent on this issue. In Puget Sound Tug & Barge, 9 OSH Cas. (BNA) 1764, 1981 WL 18907 (O.S.H.R.C. Apr. 30, 1981), the Commission held that Coast Guard regulation preempted the Act as to vessels in navigable waters only to the extent that the Coast Guard regulated specific working conditions. Id. at 1775, 1981 WL 18907 at * 11. In Dillingham Tug & Barge Corp., 10 OSH Cas. (BNA) 1859, 1982 WL 22639 (O.S.H.R.C. July 29, 1982), however, the Commission overruled Puget Sound and held that Coast Guard regulation of uninspected vessels was so pervasive that it entirely preempted OSHA regulation, i.e., a virtual industry exemption. This interpretation of section 4(b)(1) avoided the so-called "nook and cranny" approach to OSHA regulation, which would allow OSHA regulation over every "working condition" not specifically regulated by the Coast Guard. Id. at 1860, 1982 WL 22639 at * 1-2.
 
 
 23
 In yet another turn about, in Alaska Trawl Fisheries, 15 OSH Cas. (BNA) 1699, 1992 WL 155480 (O.S.H.R.C. June 18, 1992), the Commission dismissed the Dillingham industry exemption as dicta. The Commission reasoned that Dillingham involved an instance where the Coast Guard had regulated the specific working condition; thus, section 4(b)(1) clearly preempted OSHA regulation of that condition. Id. at 1704-05, 1992 WL 155480 at * 6.
 
 
 24
 The circuits also diverge on the application of section 4(b)(1) to uninspected vessels. The Fifth Circuit has held that the Act does not apply to seagoing vessels. In Clary v. Ocean Drilling and Exploration Co., 609 F.2d 1120 (5th Cir.1980), the court affirmed the exclusion of OSHA regulations as evidence. In doing so, the court held that the Act "does not apply to the working conditions of seamen on vessels operating on the high seas" because they are preempted by Coast Guard regulation. Id. at 1121-22. In Donovan, the Fifth Circuit held that OSHA's anti-retaliation provision does not apply to seamen. The court stated unequivocally, "[the employee] was a seaman on a vessel. Nothing in [the Act], therefore, applies to his working conditions." 720 F.2d at 827. The court reasoned that (1) the "working conditions of seamen are unique," (2) "[s]ection after section of the United States Code governs and regulates in minute detail the rights and duties of seamen," and (3) it would be a "disastrous and unworkable rule" to apply the Act to a vessel that steams in and out of its coverage. Id. at 828-29.
 
 
 25
 The Second and Eleventh Circuits, on the other hand, have held that OSHA regulations may apply to certain conditions aboard uninspected vessels. In Donovan v. Red Star Marine Services, 739 F.2d 774 (2d Cir.1984), the Second Circuit held that the Secretary could regulate noise aboard an uninspected vessel because the noise was a working condition not regulated by the Coast Guard. The court distinguished the Fifth Circuit cases as not dealing directly with working conditions and rejected the contention that the Secretary had no jurisdiction over seamen on uninspected vessels. Id. at 778-79. Similarly, the Eleventh Circuit in In re Inspection of Norfolk Dredging Co., 783 F.2d 1526 (11th Cir.1986), distinguished the Fifth Circuit cases, cited the difference between the Coast Guard's pervasively regulated "inspected" and less regulated "uninspected" vessels as dispositive, and held that the Secretary had jurisdiction over crane safety aboard uninspected vessels. Id. at 1530-31.
 
 
 26
 The position of the Fourth Circuit is less clear. In Taylor v. Moore-McCormack Lines, Inc., 621 F.2d 88 (4th Cir.1980), the court held that Coast Guard regulation of carbon monoxide in the hold of vessels did not preempt OSHA regulation of that same condition with respect to longshoremen. The court explained that the OSHA regulation applied because the plaintiff was a longshoreman: "The Coast Guard has responsibility for the safety of 'seamen' ... whereas the Department of Labor, under [the Act], has statutory responsibility for the safety of longshoremen.... The respective responsibilities, thus established, are exclusive." Id. at 93. Although not specifically saying so, the case seems to be like Kopczynski and was decided by the status of the plaintiff.
 
 
 27
 At its core, the issue turns on the definition of "working conditions." A broad definition will more likely lead to an ouster of the Secretary's jurisdiction. The circuit courts, however, have taken divergent paths as to this definition. It is generally agreed that section 4(b)(1) does not create an "industry exemption." For example, the fact that the railroad industry is subject to some safety regulations promulgated by the Federal Railroad Administration does not preempt OSHA regulation as to that entire industry. Baltimore and Ohio R.R. v. Occupational Safety and Health Review Comm'n, 548 F.2d 1052, 1053-54 (D.C.Cir.1976). But beyond this broad stroke, the circuits have been less than united in their approaches to delimit the scope of the term further.
 
 
 28
 The Third and Fourth Circuits have defined working conditions to be "the environmental area in which an employee customarily goes about his daily tasks." Southern Ry. Co. v. Occupational Safety and Health Review Comm'n, 539 F.2d 335, 339 (4th Cir.1976) (Southern Ry.); Pennsylvania Elec. Co. v. Federal Mine Safety and Health Review Comm'n, 969 F.2d 1501, 1504 (3d Cir.1992) (holding that OSHA regulations were preempted by Mine Safety Health Administration regulation of conveyor head drives); Columbia Gas of Penn., Inc. v. Marshall, 636 F.2d 913, 916 (3d Cir.1980) (holding that OSHA regulations did not apply to a work site consisting of a trench in which employees were repairing a pipeline). According to the Fourth Circuit, this definition avoids the extremes of defining working conditions as "particular, discrete hazards" or, alternatively, "the aggregate of circumstances of the employment relationship." Southern Ry., 539 F.2d at 339. Thus, the Secretary had jurisdiction over a facility for maintenance and repair of rolling stock, id. at 336, 340, but not over an area of mine property where the Mine Safety Health Administration had prescribed safety regulations, United Energy Serv. v. Federal Mine Safety & Health Admin., 35 F.3d 971, 977 (4th Cir.1994) (United Energy Serv.).
 
 
 29
 The Secretary has taken "sharp issue" with this definition, insisting that "working conditions" embraces both " 'environment' and 'discrete hazard.' " U.S. Air, Inc. v. Occupational Safety and Health Review Comm'n, 689 F.2d 1191, 1193 (4th Cir.1982). Nevertheless, the Third and Fourth Circuits have not deviated from this definition. E.g., United Energy Serv., 35 F.3d at 977.
 
 
 30
 In Southern Pacific Transportation Co. v. Usery, 539 F.2d 386 (5th Cir.1976), the Fifth Circuit held that "the statutory term 'working conditions' embraces both 'surroundings,' such as the general problem of the use of toxic liquids, and physical 'hazards,' which can be expressed as a location (maintenance shop), a category (machinery), or a specific item (furnace)." Id. at 391. The Fifth Circuit, thus, seems to have adopted the "environment as well as discrete hazards" approach urged by the Secretary.
 
 
 31
 We agree with the Secretary, the Commission, and the Second and Eleventh Circuits that the Coast Guard regulation of uninspected vessels does not preempt the Secretary's jurisdiction. It is not necessary for us, however, to adopt a specific definition of "working condition" to arrive at this conclusion. The Coast Guard has not promulgated regulations that specifically address the subjects of the Secretary's substantive citation; thus, the hazard-based approach leads to this no-preemption result. If we were to adopt the Third and Fourth Circuits' environmental definition, it is apparent that the Coast Guard regulation of uninspected vessels is not so pervasive as to preempt the Secretary's jurisdiction as to any particular portion of such vessels nor as to such vessels in whole.
 
 
 32
 While uninspected vessels are subject to many statutes and regulations, only a small subset of these apply to "working conditions of employees with respect to which [the Coast Guard] ... exercise[s] statutory authority to prescribe or enforce standards or regulations affecting occupational safety or health." 29 U.S.C. § 653(b)(1). The all-encompassing statutory provisions regarding seaworthiness are not enforced by the Coast Guard but by the courts. 46 U.S.C. § 10903. Moreover, Coast Guard regulation of the crew is not regulation of a "working condition." We are thus left with the regulations specific to certain conditions aboard uninspected vessels and those regulations applicable when the uninspected vessel is pressed into certain services. In light of the Coast Guard's unequivocal denial of any comprehensive regulation of uninspected vessels, the Coast Guard has not exercised its authority in this area.
 
 VI
 
 33
 Turning to the recordkeeping citation, we are first confronted with the issue of whether Tidewater's payment of the reduced penalty and compliance with the stipulated posting requirements moots the Secretary's appeal. If her petition is not moot, we must determine whether either section 4(b)(1) or section 8(b) divests the Secretary of jurisdiction to require operators of uninspected vessels to keep injury as well as illness records. We now discuss those issues.
 
 A.
 
 34
 "Simply stated, a case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." Powell v. McCormack, 395 U.S. 486, 496, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969). The Commission ruled that the Secretary lacks jurisdiction to enforce injury recordkeeping requirements on board uninspected vessels. That ruling presents a live controversy. The only question is whether Tidewater's payment of the monetary fine and compliance with stipulated posting requirements change that jurisdictional decision. That paid fine and posting did not involve injury recordkeeping, the primary issue at stake in this appeal. Thus, Tidewater has failed to prove this appeal is moot. Cf. Reich v. Occupational Safety and Health Review Comm'n, 102 F.3d 1200, 1201-02 (11th Cir.1997) (holding that employer's going out of business did not moot appeal of monetary sanctions).
 
 B.
 
 35
 The Secretary's ability to require recordkeeping stems from 29 U.S.C. § 657(c)(1), which mandates that each employer keep records the Secretary "may prescribe by regulation as necessary or appropriate for the enforcement of this chapter or for developing information regarding the causes and prevention of occupational accidents and illnesses." In addition, the Secretary is to develop "an effective program of collection, compilation, and analysis of occupational safety and health statistics." 29 U.S.C. § 673(a). This program "may cover all employments whether or not subject to any other provisions of this chapter but shall not cover employments excluded by section 653 of this title [i.e., section 4 of the Act]." Id.
 
 
 36
 In analyzing the Secretary's jurisdiction in this area, the Commission reasoned that her efforts are circumscribed by section 8(d), requiring the Secretary to minimize unnecessary duplication of efforts, and by section 4 through its incorporation in 29 U.S.C. § 673(a). Because the Coast Guard regulations do not touch illness-reporting, the Commission held there was jurisdiction in this area. But since the Coast Guard does require some injury-reporting (though not as extensive as that required by the Secretary), the Commission concluded that the Secretary could not require injury recordkeeping. According to the Commission, "This conclusion follows long-established Commission precedent holding that '[s]ection 4(b)(1) does not require that another agency exercise its authority in the same manner or in an equally stringent manner,' and effectuates the section 8(d) prohibition on unnecessary duplication of recordkeeping."
 
 
 37
 However, section 4(b)(1) has no bearing on the extent of the Secretary's authority to require recordkeeping. That section preempts the Secretary's jurisdiction to regulate working conditions. The Secretary's recordkeeping requirements do not regulate working conditions; rather, they merely serve to gather information.
 
 
 38
 This distinction is evident in 29 U.S.C. § 657(c)(1). This section allows the Secretary to require recordkeeping "for the enforcement of this chapter or for developing information regarding the causes and prevention of occupational accidents and illnesses." 29 U.S.C. § 657(c)(1) (emphasis added). Obviously, section 4(b)(1) bears on the Secretary's recordkeeping requirements "for the enforcement of this chapter." But the scope of the Secretary's power to require recordkeeping goes beyond that needed for enforcement and extends to "developing information" about occupational accidents and illnesses.
 
 
 39
 The conclusion that section 4(b)(1) does not restrict the Secretary's recordkeeping jurisdiction is also supported by 29 U.S.C. § 673. While that section refers to section 4 as the limit to the Secretary's statistical-information-gathering jurisdiction, this limit is not defined by section 4(b)(1) but rather section 4(a). Section 673 states that the Secretary's jurisdiction "shall not cover employments excluded by [section 4]." 29 U.S.C. § 673(a) (emphasis added). The only "employments" excluded by section 4 are found in section 4(a), which excludes "employment performed in a workplace" outside of certain geographic boundaries. 29 U.S.C. § 653(a). Section 4(b)(1), on the other hand, ousts the Secretary's jurisdiction over "working conditions," not "employments." See 29 U.S.C. § 653(b)(1).
 
 
 40
 On top of all this, the Secretary does not interpret section 4(b)(1) as limiting her recordkeeping jurisdiction. We must defer to this reasonable interpretation, even where the Commission disagrees. Martin, 499 U.S. at 157-58, 111 S.Ct. 1171.
 
 C.
 
 41
 Since section 4(b)(1) does not apply, we must examine whether section 8(d) restricts the Secretary's jurisdiction in this area. The Commission found that the Coast Guard does not require the recording of illnesses; thus, as indicated earlier, section 8(d) does not oust the Secretary's jurisdiction to require illness reporting. The Coast Guard, however, does require the reporting of certain injuries. We must therefore determine whether the Secretary's recording requirements amount to "unnecessary duplication."
 
 
 42
 While the Coast Guard may require the reporting of "serious injury to an individual," 46 U.S.C. § 6101(a), the Secretary seeks information concerning any injury involving medical treatment, loss of consciousness, restriction of work or motion, or transfer to another job. 29 U.S.C. §§ 657(c)(2), 673(a). Additionally, unlike the Coast Guard, the Secretary requires employers to create a detailed supplementary record for each injury. 29 C.F.R. § 1904.4. The Coast Guard regulations do not, therefore, capture the information sought by the Secretary.
 
 
 43
 We therefore agree with the Secretary and hold that the Secretary has jurisdiction to require Tidewater to record both illnesses and injuries occurring on board the Dr. Jack as it operated in the waters at issue here.
 
 
 44
 SECRETARY'S PETITION GRANTED; TIDEWATER'S PETITION DENIED; COMMISSION AFFIRMED IN PART, REVERSED IN PART.
 
 
 
 *
 Honorable David A. Ezra, United States District Judge, District of Hawaii, sitting by designation