112 F.3d 402
 155 L.R.R.M. (BNA) 2065, 97 Cal. Daily Op.
Serv. 2983,
97 Daily Journal D.A.R. 5287
 NATIONAL TREASURY EMPLOYEES UNION (NTEU), Petitioner,
v.
FEDERAL LABOR RELATIONS AUTHORITY, Respondent,
U.S. Department of Treasury, U.S. Customs Service, Pacific
Region, Respondent-Intervenor.
 No. 95-70714.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted March 4, 1997.
Decided April 25, 1997.
 
 Elaine Kaplan, National Treasury Employees Union, Washington, DC, for petitioner.
 William E. Persina, Federal Labor Relations Authority, Washington, DC, for respondent Federal Labor Relations Authority.
 William Kanter and Marc Richman, United States Department of Justice, Washington, DC, for respondent-intervenor.
 Petition to Review a Decision of the Federal Labor Relations Authority. FLRA Nos. 50, 85.
 Before: FARRIS, KOZINSKI, and T.G. NELSON, Circuit Judges.
 PER CURIAM.
 
 OVERVIEW
 
 1
 The National Treasury Employees Union ("NTEU") petitions this court for review of the Federal Labor Relations Authority's ("FLRA" or "Authority") decision holding that grievances filed by NTEU on behalf of its members were not arbitrable. We dismiss for lack of jurisdiction.
 
 BACKGROUND
 
 2
 Before a seagoing vessel originating from a foreign port can unlade cargo at a United States port, it must make formal entry at the domestic port. 19 U.S.C. § 1435.[1] Because formal entry was often time-consuming and inefficient, Congress provided an alternative, streamlined "preliminary entry" procedure that is used solely at the request of the vessel's master. See 19 U.S.C. § 1448. This optional preliminary entry procedure was, at the time the present case arose and until December 8, 1993, governed by 19 U.S.C. § 1448(a).[2] Pursuant to § 1448(a), the vessel's master could accomplish preliminary entry by affirming the truth of the statements contained in the vessel's manifest and delivering the manifest to the United States Customs Service ("Customs Service") Officer who boarded the vessel. Id. After preliminary entry was accomplished, cargo could be unloaded to approved storage areas pending formal entry.
 
 
 3
 In an effort to make more efficient use of Customs Service personnel, management of the Pacific Region of the Customs Service instituted, in 1984, the Radio Preliminary Entry program ("RPE"). RPE allowed vessels arriving from foreign ports to accomplish preliminary entry by electronically transmitting manifest data to vessel agents, who would deliver the data to the Customs Service. As a result of RPE, there was no longer a need for Customs Service Officers to physically board a vessel during preliminary entry procedures. This resulted in the loss of overtime pay for officers who would have performed vessel boardings as part of preliminary entry procedures.
 
 
 4
 In 1991 and 1992, NTEU, the exclusive bargaining representative of the employees of the Customs Service, began grievance arbitration procedures under the collective bargaining agreement, alleging among other things, that the implementation of RPE violated various customs laws, including 19 U.S.C. § 1448, and that its members were losing overtime pay.
 
 
 5
 NTEU's grievances were submitted to arbitration pursuant to 5 U.S.C. § 7121(b)(1). The arbitrator held that RPE violated § 1448 because it eliminated the requirement of vessel boarding by inspectors as part of preliminary entry procedures. As a remedy, the arbitrator directed that employees be made whole for lost overtime resulting from implementation of RPE, beginning from the time the grievances were filed.
 
 
 6
 The Customs Service filed exceptions to the arbitrator's decision with the FLRA. The FLRA set aside the arbitrator's award, holding that NTEU's challenge to RPE was not arbitrable under 5 U.S.C. § 7103(a)(9)(C).[3] NTEU filed a timely petition for review.
 
 DISCUSSION
 
 7
 This case requires us to determine the extent of our statutory jurisdiction to review a decision of the FLRA when it has set aside an arbitrator's award. Because we conclude that the FLRA's decision is not subject to judicial review, we dismiss this appeal for lack of jurisdiction.
 
 
 8
 Federal courts are courts of limited jurisdiction. As such, "our power to adjudicate claims is limited to that granted by Congress." Nieto v. Ecker, 845 F.2d 868, 871 (9th Cir.1988). Unless a grant of jurisdiction over a particular case affirmatively appears, we are presumed to lack jurisdiction. General Atomic Co. v. United Nuclear Corp., 655 F.2d 968, 968-69 (9th Cir.1981), cert. denied, 455 U.S. 948, 102 S.Ct. 1449, 71 L.Ed.2d 662 (1982).
 
 
 9
 Our jurisdiction to review a final decision of the FLRA is governed by 5 U.S.C. § 7123(a), which provides, in relevant part:
 
 
 10
 Any person aggrieved by any final order of the Authority other than an order under--
 
 
 11
 (1) section 7122 of this title (involving an award by an arbitrator ), unless the order involves an unfair labor practice under section 7118 of this title, ...
 
 
 12
 ....
 
 
 13
 may ... institute an action for judicial review of the Authority's order in the United States court of appeals....
 
 
 14
 5 U.S.C. § 7123(a) (emphasis added). The plain language of this section makes it clear that a circuit court can review a final decision of the FLRA involving an arbitrator's award only if an unfair labor practice is involved. It is undisputed that the present case does not involve an unfair labor practice. Therefore, under the plain language of the statute, the FLRA's decision is unreviewable.
 
 
 15
 The legislative history of the statute supports this conclusion. The House Report states that "[o]nly those labor management relations matters specifically referred to in section 7123 shall be judicially reviewable." United States Dep't of Justice v. FLRA, 792 F.2d 25, 29 (2d Cir.1986) (quoting H.R.Rep. No. 1403, 95th Cong., 2d Sess. 58 (1978) (House Report)). The House Conference Report notes that unless a decision relates to an unfair labor practice, "decisions of the Authority are final and conclusive and not subject to further judicial review except for questions arising under the Constitution." H.R.Rep. No. 1717, 95th Cong., 2d Sess. 158 (1978), reprinted in 1978 U.S.C.C.A.N. 2860 (Conference Report). The House Conference Report also notes that it was the intent of the House to make it clear that "the awards of arbitrators, when they become final, are not subject to further review by any other authority or administrative body." Id.
 
 
 16
 We reject NTEU's and the Customs Service's argument that the presumption of judicial review should overcome the clear statutory language of § 7123. In Lindahl v. OPM, 470 U.S. 768, 105 S.Ct. 1620, 84 L.Ed.2d 674 (1985), the Supreme Court stated that access to judicial review should be limited "only upon a showing of 'clear and convincing evidence' of a contrary legislative intent." Id. at 778, 105 S.Ct. at 1626. However, the Court also noted that this presumption of judicial review "has never turned on a talismanic test." Id. at 778-79, 105 S.Ct. at 1627. "Rather, the question whether a statute precludes judicial review 'is determined not only from its express language, but also from the structure of the statutory scheme, its objectives, its legislative history, and the nature of the administrative action involved.' " Id. at 779, 105 S.Ct. at 1627 (quoting Block v. Community Nutrition Inst., 467 U.S. 340, 345, 104 S.Ct. 2450, 2453-54, 81 L.Ed.2d 270 (1984)).
 
 
 17
 We also reject NTEU's and the Customs Service's reliance on United States Dep't of Treasury v. FLRA ("Treasury"), 43 F.3d 682 (D.C.Cir.1994), which held that courts of appeals have jurisdiction to review the FLRA's determination of its own jurisdiction. We are not persuaded by the D.C. Circuit's opinion and therefore decline to follow it. The language of § 7123 is clear-judicial review of the FLRA's decision regarding an arbitrator's award is precluded unless it involves an unfair labor practice. The arbitrator's award in the present case, as in the D.C. Circuit case, does not involve an unfair labor practice.
 
 
 18
 We are unpersuaded by the D.C. Circuit's argument that Congress couldn't have intended section 7123 to be enforced as written. According to the D.C. Circuit, it's "utterly inconceivable" that Congress would make such a "staggering delegation" of interpretive authority to the FLRA. 43 F.3d at 690. To begin with, we find "utterly inconceivable" arguments a poor substitute for clear statutory language. In any event, we do not read the delegation of authority to the FLRA as quite so broad as perceived by our D.C. Circuit colleagues, nor do we view the congressional decision to preclude judicial review of certain FLRA orders as quite so extraordinary.
 
 
 19
 Where the D.C. Circuit went astray is in thinking that by precluding judicial review "all or any part of American law would be definitively interpreted by the FLRA." Id. (emphasis added). This concern is, of course, unfounded. The FLRA only has the authority to determine the implications of such laws on labor relations; the agency is not forced to conform its substantive actions to the FLRA's interpretation. For example, in Treasury, which involved the same program at issue here, the FLRA couldn't have forced the Customs Service to change its policies regarding the method of effecting customs clearance for vessels entering port at off-peak hours. Customs would have been free to continue its practice of RPE, but might have been required to compensate the employees for work which the FLRA said they were entitled to perform but were denied as a result of the new procedures. We understand, of course, that cost can affect substantive decisions, but that does not change the fact that the policy judgment remains with the agency and is not, somehow, delegated to the FLRA.
 
 
 20
 In considering whether it was "utterly inconceivable" for Congress to have denied courts the power to intervene, we deem it significant that this is an intramural dispute between two executive branch agencies and executive branch employees. We do not find it at all inconceivable for Congress to have decided that the executive branch should work out its internecine disputes without interference from the judicial branch. After all, everyone involved in this dispute is ultimately answerable to the President who has various informal remedies available if he is dissatisfied with FLRA decisions-such as refusing to reappoint members when their terms expire. It's thus quite likely that Congress intended just what it said-that the judicial branch stay out of the business of reviewing FLRA decisions involving an arbitration award.
 
 
 21
 As well, we find the D.C. Circuit's statutory construction effort strained. The D.C. Circuit claims that section 7123(a), which bars review of FLRA decisions "involving an award by an arbitrator," must be read in conjunction with section 7103(a)(9), which defines permissible grounds for a "grievance." According to the D.C. Circuit, because an arbitrator's award must involve a "grievance," Congress only intended to bar appeals of FLRA decisions to the extent they involve a "grievance." See 43 F.3d at 689. We note, however, that Congress left the definition of "grievance" vague-e.g., "any claimed violation ... of any law ... affecting conditions of employment," 5 U.S.C. § 7103(a)(9)(C)(ii). The D.C. Circuit's interpretation therefore requires us to infer congressional intent from an ambiguous statutory provision-the definition of "grievance"-to override a clear statutory command: the bar on judicial review.
 
 
 22
 Moreover, Congress knew that "an award by an arbitrator" would involve more than just the resolution of a "grievance." Congress specified that "procedures for the settlement of grievances" must include the resolution of "questions of arbitrability." 5 U.S.C. § 7121(a)(1) (emphasis added). As a result, when Congress barred review of FLRA decisions "involving an award by an arbitrator," it also necessarily barred review of FLRA decisions involving questions of arbitrability, including whether a law "affect[s] conditions of employment."
 
 
 23
 Finally, the D.C. Circuit is exaggerating the threat of overreaching by the FLRA. If the FLRA acts "in excess of its delegated powers and contrary to a specific [statutory] prohibition," district courts have jurisdiction to intervene under Leedom v. Kyne, 358 U.S. 184, 188, 79 S.Ct. 180, 183-84, 3 L.Ed.2d 210 (1958).
 
 
 24
 Because the arbitrator's award in the present case does not involve an unfair labor practice, the FLRA's decision regarding the award is not subject to judicial review. This appeal is therefore dismissed for lack of jurisdiction.
 
 
 25
 DISMISSED.
 
 
 
 [1]
 Some of the statutory provisions at issue in this case were amended or repealed in December 1993 by the North American Free Trade Agreement ("NAFTA") Implementation Act, Pub.L. No. 103-182, 107 Stat.2057 (1993). All references, unless otherwise indicated, are to the statutory scheme in effect prior to the amendment
 
 
 [2]
 Congress amended § 1448(a) to provide for formal entry through electronic communication, and § 1434(b) to provide only that "[i]n permitting preliminary entry, the Customs Service shall board a sufficient number of vessels to ensure compliance with the laws it enforces." These statutory changes do not moot this appeal because the appellants request back pay
 
 
 [3]
 To be subject to arbitration, a grievance brought by a labor organization must allege either a violation of the collective bargaining agreement, or the misapplication of a law, rule or regulation "affecting conditions of employment." 5 U.S.C. § 7103(a)(9)(C)