**Jeffrey W. EISINGER, Petitioner,**

v.

**FEDERAL LABOR RELATIONS AUTHORITY, Respondent.**

**No. 98–70866.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 10, 2000

Filed July 17, 2000

Lisa R. Sattler, McDermott, Will & Emery, Menlo Park, California, for the petitioner.

James F. Blandford, attorney, Federal Labor Relations Authority, Washington, D.C., for the respondent.

Before: HUG, Chief Judge, D. W. NELSON, and McKEOWN, Circuit Judges.

D.W. NELSON, Circuit Judge:

Eisinger petitions this court for review of the Federal Labor Relations Authority's ("FLRA") decision affirming the dismissal of his "clarification of unit" ("CU") petition for lack of standing: In his CU petition, Eisinger sought to clarify whether the employees of the Small Business Administration's ("SBA") Fresno Commercial Loan Servicing Center were subject to the agency's collective bargaining agreement with the American Federation of Government Employees ("AFGE"). Eisinger argues that: (1) we have jurisdiction to review the FLRA's final order pursuant to 5 U.S.C. § 7123(a) (1994); and (2) the FLRA's regulation on standing, 5 C.F.R. § 2422.2, contravenes the plain language in 5 U.S.C.

§§ 7103 and 7111. We grant the petition for review and reverse the FLRA's decision.

## I. FACTUAL BACKGROUND

From 1985 to 1997, Eisinger was employed in the Fresno District Office of the SBA. Employees in this office are part of a nationwide consolidated bargaining unit of SBA employees, a unit represented exclusively by AFGE. As an SBA employee, Eisinger was subject to the collective bargaining agreement ("Master Agreement") between the SBA and the AFGE.

In 1997, Eisinger was transferred from the district office to the Fresno Commercial Loan Servicing Center (the "Servicing Center"), an office of about 50 employees that the SBA created in 1989 and that became a separate office in 1995. On October 20, 1997, Eisinger filed a petition with the FLRA's Regional Office in San Francisco requesting a determination that the employees of the Servicing Center, particularly its professional employees, were not subject to the Master Agreement.[1]

The FLRA is the agency in charge of overseeing labor-management relations in the federal government pursuant to the Federal Services Labor–Management Relations Statute, 5 U.S.C. §§ 7101 et seq. On October 31, 1997, the FLRA's Regional Director ordered Eisinger "to show cause, in writing, why the petition should not be dismissed as improperly filed pursuant to the Rules and Regulations" of the FLRA. Although Eisinger's response conceded that he lacked standing under FLRA regulations, he argued that the statutory language of 5 U.S.C. § 7111(b)(2) permits "any person" to file a petition and that § 7103(a)(1) defines a person as "an indi-

---

1. Eisinger wrote:

The agency and the union take the position that the employees of the FCLSC ["Servicing Center"] are subject to the Master Agreement. I disagree. No vote has ever been taken to determine whether the employees of the FCLSC wish to be represented by the AFGE. Further, no vote has ever been conducted

among the professional employees of the AFGE as to union representation.

I believe it is inappropriate for the agency and the union to continue to insist that the employees of the FCLSC, particularly the professional employees, are subject to the Master Agreement.

vidual, labor organization, or agency." Eisinger contended that the statute "has precedence over the Regulations."

On December 2, 1997, the Regional Director issued a decision and order dismissing Eisinger's petition, which was described as "seeking clarification of, or an amendment to, a certification in effect or a matter relating to representation." The director found that 5 C.F.R. § 2422.2 provides that only an agency or labor organization may file such a petition. Furthermore, he found that the regulation "clearly limits the ability of certain 'persons' to file particular petitions and have them processed."[2] On December 8, 1997, Eisinger timely filed *pro se* an application for review of the director's decision with the FLRA. The FLRA granted review.

In a 2–1 decision, the FLRA affirmed the Regional Director's dismissal of Eisinger's petition. Chair Segal and Member Wasserman filed separate concurring opinions and Member Cabaniss dissented. Although there was no majority opinion, the two concurring members agreed that "5 C.F.R. § 2422.2 is not inconsistent with the statute." Eisinger timely appealed the FLRA's decision to this Court. After initial briefing, we appointed Eisinger *pro bono* counsel and established a supplemental briefing schedule.

## II. STANDARD OF REVIEW

Although the "interpretation of a statute is a question of law reviewed *de novo*, the court must give deference to an agency's interpretation of a statute that it administers." *Herman v. Tidewater Pacific, Inc.*, 160 F.3d 1239, 1241 (9th Cir.

2. Section 2422.2 provides:

§ 2422.2 Standing to file a petition
A representation petition may be filed by: an individual; a labor organization; two or more labor organizations acting as a joint-petitioner; an individual acting on behalf of any employee(s); an agency or activity; or a combination of the above: Provided, however, that

\* \* \* \* \* \*

(c) only an agency or labor organization may file a petition pursuant to section

1998) (citations omitted). "[L]egislative regulations promulgated pursuant to ... express authority will be upheld 'unless they are arbitrary, capricious, or manifestly contrary to the statute.'" *Bicycle Trails Council of Marin v. Babbitt*, 82 F.3d 1445, 1454 (9th Cir.1996) (quoting *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 844, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)).[3]

The FLRA is entrusted with broad authority to interpret the Labor–Management Relations Statute and to promulgate regulations that carry out the statute's provisions. *See* 5 U.S.C. §§ 7105, 7134. The Supreme Court has addressed the proper deference accorded to the FLRA:

[T]he FLRA was intended to develop specialized expertise in its field of labor relations and to use that expertise to give content to the principles and goals set forth in the Act. Consequently, the Authority is entitled to considerable deference when it exercises its "special function of applying the general provisions of the Act to the complexities" of federal labor relations.

On the other hand, the "deference owed to an expert tribunal cannot be allowed to slip into a judicial inertia which results in the unauthorized assumption by an agency of major policy decisions properly made by Congress." Accordingly, while reviewing courts should uphold reasonable and defensible constructions of an agency's enabling Act, they must not "rubber-stamp ... administrative decisions that they deem inconsistent with a statutory mandate or that

2422.1(b) or (c) [clarification or amendment petitions].
5 C.F.R. § 2422.2 (2000).

3. The statute's jurisdictional provision instructs us not to set aside the FLRA's decision unless it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." *Department of Veterans Affairs Med. Ctr. v. FLRA*, 16 F.3d 1526, 1529 (9th Cir.1994) (citing 5 U.S.C. § 7123(c), incorporating 5 U.S.C. § 706) (other citations omitted).

frustrate the congressional policy underlying a statute."

*Bureau of Alcohol, Tobacco and Firearms v. FLRA,* 464 U.S. 89, 97, 104 S.Ct. 439, 78 L.Ed.2d 195 (1983) (citations omitted).

■ We recognize that "[a]n agency's interpretation of a statutory provision ... [that] it is charged with administering is entitled to a high degree of deference." *Rainsong Co. v. Federal Energy Regulatory Comm'n,* 106 F.3d 269, 272 (9th Cir. 1997) (citations omitted). However, " '[t]he judiciary is the final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear congressional intent.' " *Natural Resources Defense Council v. United States Dep't of the Interior,* 113 F.3d 1121, 1124 (9th Cir.1997) (quoting *Chevron,* 467 U.S. at 843 n. 9, 104 S.Ct. 2778).

## III. *DISCUSSION*

We are presented with two questions of first impression: (1) whether we have jurisdiction under § 7123 to review a petition filed under § 7111; and (2) whether the FLRA's regulation, 5 C.F.R. § 2422.2(c), which limits standing to file petitions to agencies and unions, is contrary to the statutory language authorizing "any person" to file such a petition. Both questions turn on statutory construction.

### A. *JURISDICTION*

■ Our jurisdiction to review a final decision of the FLRA is governed by 5 U.S.C. § 7123(a), which provides, in relevant part:

> Any person aggrieved by *any final order of the Authority other than* an order under—
>
> \*      \*      \*      \*      \*      \*
>
> (2) section 7112 of this title (involving an appropriate unit determination),
> may ... institute an action for judicial review of the Authority's order in the United States court of appeals....

---

**4.** The other exception is § 7122 (arbitration awards), which is not relevant to this case.

5 U.S.C. § 7123(a) (emphasis added). The plain language of the statute clearly states that we have jurisdiction over all final orders from the FLRA, with one of the two exceptions being orders issued under § 7112.[4]

Section 7112 discusses the "[d]etermination of appropriate units for labor organization representation" and clearly states that "[t]he Authority shall determine the appropriateness of any unit." 5 U.S.C. § 7112(a). An appropriate unit determination involves "whether ... the appropriate unit should be established on an agency, plant, installation, functional, or other basis...." *Id.*

In this case, Eisinger filed his petition under § 7111, not § 7112. Section 7111(b)(2) involves the "clarification of, or amendment to" an existing unit. The statute says that "[i]f a petition is filed with the Authority ... by any person seeking clarification of, or amendment to, a certification then in effect or a matter relating to representation; the Authority *shall* investigate the petition,...." 5 U.S.C. § 7111(b)(2) (emphasis added). A clarification of unit (CU) petition is a type of "representation petition" that is "appropriate where there is uncertainty about the status of an employee with respect to the bargaining unit or in cases where reorganization has altered the scope of the unit." Robert T. Simmelkjaer, *Representation and Election, in* Federal Civil Service Law and Procedures 213, 216 (Ellen M. Bussy ed., 1990).

Ordinarily, the investigation of a CU petition under § 7111 results in an appropriate unit determination under § 7112:

> Following the filing of a representation petition in accordance with 7111(b), the regional director ... must conduct an investigation to determine whether the proposed unit is appropriate for the purposes of collective bargaining. The regional director's investigation not only

*See* 5 U.S.C. § 7123(a)(1).

applies the criteria for determining appropriateness contained in section 7112(a)(1) but also ensures that the unit does not contain excluded categories of employees identified in section 7112(b)(1)–7112(b)(7). Simmelkjaer, *Representation and Elections*, 222–23. The FLRA is "bound by the three criteria for determining the appropriateness of any unit as mandated by section 7112(a)(1)." *International Communication Agency*, 5 F.L.R.A. 97, 99 (1981). Thus, FLRA review of § 7111/CU petitions typically involves application of the substantive criteria required by § 7112(a). *See, e.g., Department of Defense Dependents Schools*, 6 F.L.R.A. 297 (1981); *Department of Agriculture, Animal Plant Health Inspection Serv.*, 6 F.L.R.A. 261 (1981); *International Communication Agency*, 5 F.L.R.A. at 99.

■ The primary reason for our jurisdiction over this case is the plain language of § 7123. It is a well-recognized rule of statutory construction that "[t]he plain meaning of the statute controls, and courts will look no further, unless its application leads to unreasonable or impracticable results." *United States v. Daas*, 198 F.3d 1167, 1174 (9th Cir.1999) (citing *Seattle–First Nat'l Bank v. Conaway*, 98 F.3d 1195, 1197 (9th Cir.1996)). The plain meaning of § 7123 is unambiguous: If the FLRA's final order is not an "appropriate unit determination" under § 7112 and if no other exception applies, then we have jurisdiction. We reject the FLRA's argument that in this case it made an "appropriate unit determination" under § 7112. The FLRA dismissed Eisinger's petition on standing grounds. It did not conduct an investigation, it did not make an appropriate unit determination, and it did not consider the three criteria for determining the appropriateness of a unit as mandated by § 7112(a). Neither the Regional Director nor the FLRA moved beyond the procedures of § 7111 and into the substance of § 7112. Therefore, this is an atypical case where a CU petition filed under § 7111 does not implicate § 7112.

■ We have jurisdiction because we are not interfering with the FLRA's unreviewable authority to decide the merits of representation petitions. We do not believe that we should limit our jurisdiction because Eisinger may have other avenues of relief.[5] Nor do we believe that our decision will lead to a bifurcated review of FLRA decisions based on whether or not they are decided on procedural grounds (such as mootness, ripeness, or standing) or on the merits. Section 7111 commands that if a CU petition is filed by "any person," the FLRA "*shall* investigate the petition[ ]...." 5 U.S.C. § 7111(b)(2) (emphasis added). By using the word "shall," Congress mandated an FLRA investigation of every § 7111 petition under § 7112. *See Mallard v. United States Dist. Court*, 490 U.S. 296, 302, 109 S.Ct. 1814, 104 L.Ed.2d 318 (1989) (finding that use of the word "shall" indicates a command). Thus, before dismissing this case on procedural grounds, the FLRA should have investigated the petition according to the procedures of § 7111 and the criteria of § 7112. Indeed, if the FLRA had investigated the merits of Eisinger's peti-

---

**5.** The FLRA, citing *National Treasury Employees Union (NTEU) v. FLRA*, 112 F.3d 402, 406 (9th Cir.1997) (per curiam), noted that if its regulations on standing are "in excess of its delegated powers and contrary to a specific [statutory] provision," then the district court has original jurisdiction. *Leedom v. Kyne*, 358 U.S. 184, 188, 79 S.Ct. 180, 3 L.Ed.2d 210 (1958). The district court, however, has original jurisdiction only if appellate review is presumptively foreclosed. *See id.* at 187, 79 S.Ct. 180. In order for Eisinger to prevail at the district court, the FLRA must have com-

pletely exceeded its jurisdictional authority, rather than just acted arbitrarily and capriciously. Furthermore, the FLRA fails to acknowledge that our decision in *NTEU* held that we lacked jurisdiction over that arbitration case because the statutory language of § 7123 was clear. *See NTEU*, 112 F.3d at 404–05. In this case, we likewise find that the plain meaning of § 7123 is clear, but this time it indicates that we have jurisdiction. Given this clear statutory language, it is unnecessary to abdicate our jurisdiction because Eisinger may have other avenues of relief.

tion, or if it ever considers the merits of his petition in the future, we will not have jurisdiction to review the FLRA's decision. As it currently stands, however, asserting jurisdiction over this case based on the statute's plain language will not lead to an "unreasonable or impracticable" result.

■ We also reject the FLRA's contention that the legislative history is clearly contrary to the statute's plain language. We are mindful that "access to judicial review should be limited 'only upon a showing of "clear and convincing evidence" of a contrary legislative intent.'" *NTEU*, 112 F.3d at 404–05 (quoting *Lindahl v. OPM*, 470 U.S. 768, 778, 105 S.Ct. 1620, 84 L.Ed.2d 674 (1985)). The "presumption of judicial review 'has never turned on a talismanic test.'" *Id.* at 405 (quoting *Lindahl*, 470 U.S. at 778–79, 105 S.Ct. 1620). "'Rather, the question whether a statute precludes judicial review "is determined not only from its express language, but also from the structure of the statutory scheme, its objectives, its legislative history, and the nature of the administrative action involved."'" *Id.* (quoting *Lindahl*, 470 U.S. at 779, 105 S.Ct. 1620 (quoting *Block v. Community Nutrition Institute*, 467 U.S. 340, 345, 104 S.Ct. 2450, 81 L.Ed.2d 270 (1984))).

The express language and the nature of the administrative action in this case indicate that we have jurisdiction. We reject the FLRA's reliance on *United States Dep't of Justice v. FLRA ("Justice")*, 727 F.2d 481 (5th Cir.1984), which the FLRA cites in support of its argument that the statute's legislative history suggests otherwise. The Fifth Circuit held that it did not have jurisdiction to review an FLRA decision under § 7111 that overturned the results of a representation election and ordered a second election. *See id.* at 494. The Fifth Circuit read the statute's legislative history as bearing "strong indicia of an intent on the part of Congress to exclude section 7111 election decisions from direct appellate review." *Id.* at 492. Furthermore, in dicta, the Fifth Circuit reads the legislative history as suggesting that

Congress also intended "to treat the Authority's decisions in representation proceedings as 'non-final' orders, which were not reviewable...." *Id.* at 493.

The Fifth Circuit's reading of the legislative history is overbroad. The Senate version of the bill allowed appeals only of unfair labor practices. *See* H.R.Rep. No. 1717, 95th Cong., 2d Sess. 153 (1978), *reprinted in* 1978 U.S.C.C.A.N. 2860, 2887 (Conference Report). The House version allowed appeals from unfair labor practice decisions and "all other final decisions of the Authority involving an award by an arbitrator, and the appropriateness of the unit an organization seeks to represent...." *Id.* The conference committee compromised by excluding arbitration awards and appropriate unit determinations from judicial review, but by allowing review of all other decisions:

> In the case of those other matters that are appealable to the Authority the conference report authorizes both the agency and the employee to appeal the final decision of the Authority except in two instances where the House recedes to the Senate. As in the private sector, there will no judicial review of the Authority's determination of the appropriateness of bargaining units, and there will be no judicial review of the Authority's action on those arbitrators awards in grievance cases which are appealable to the Authority.

*Id.* We find this conference report to be consistent with the plain language of the statute: All final FLRA orders are appealable, except those relating to appropriate unit determinations and arbitration awards.

The Fifth Circuit argued by implication that since § 7111 "election decisions" were not mentioned in either the House or Senate bills, they were not appealable. Furthermore, it contended that the reference to "the private sector" and a statement by one of the bill's co-sponsors indicate that we should follow NLRB case law that any order during a representation proceeding

is not a final order. *See Justice*, 727 F.2d at 492. The Fifth Circuit's reading, however, ignores the consistency between the statutory language and the legislative history.

The Fifth Circuit downplayed the plain meaning argument by characterizing it as "expressio unius est exclusio alterius." *Id.* at 491. This canon of statutory construction means "the [expression] of one thing implies the exclusion of all the others." William N. Eskridge, Jr., *The New Textualism*, 37 U.C.L.A. L.Rev. 621, 664 (1990). The statute in this case does not by implication require excluding anything. Its plain language explicitly *includes* everything within our judicial review, with two well-defined exceptions. The Fifth Circuit's opinion argued that the legislative history implies additional exceptions. We leave that task for Congress.

Finally, the Fifth Circuit's decision is distinguishable because it rested on a finding that ordering a second election is not a "final order" under § 7123. *See Justice*, 727 F.2d at 493 ("With regard to the particular order here, it is especially clear that it is not final.... [S]etting aside the first election and directing a second election does not have any conclusive legal consequences nor does it finally determine any rights or obligations.... That matter is left to a second election and subsequent certification proceedings."). In contrast, the FLRA order in this case was a "final order." By dismissing Eisinger's petition on standing grounds, the FLRA precluded subsequent proceedings on the merits. Thus, unlike the Fifth Circuit's refusal to review an order of a second election, this order was final for the purposes of our jurisdiction under § 7123.

In summary, we have jurisdiction over this case because (1) the plain language of the statute clearly grants us jurisdiction over all final FLRA orders other than those under § 7112; (2) the FLRA's order addressed only standing under § 7111 and never reached the merits under § 7112; and (3) the statute's legislative history is not inconsistent with its plain language.

## B. *STANDING*

■ We reverse the FLRA's decision on standing because its regulation contravenes the applicable statutory language. Once again, we find that the plain meaning of the statute is clear—an individual has standing to file a petition under § 7111.

The FLRA's regulation on standing provides that "only an agency or labor organization may file a petition" to clarify or amend a unit determination. 5 C.F.R. § 2422.2(c). Although Eisinger conceded that the regulation denies him standing, he argues that the FLRA's regulation is contrary to the plain language of the statute. Section 7111(b)(2) provides, in relevant part:

(b) *If a petition is filed with the Authority—*

\*  \*  \*  \*  \*  \*

(2) *by any person* seeking clarification of, or an amendment to, a certification then in effect or a matter relating to representation;

the Authority shall investigate the petition, and if it has reasonable cause to believe that a question of representation exists, it shall provide an opportunity for a hearing (for which a transcript shall be kept) after a reasonable notice.

\*  \*  \*  \*  \*  \*

5 U.S.C. § 7111(b)(2) (emphasis added). Furthermore, Section 7103 provides definitions for the terms in § 7111, including a definition for "person":

(a) For the purpose of this chapter—

(1) "person" means an *individual,* labor organization, or agency;

\*  \*  \*  \*  \*  \*

5 U.S.C. § 7103(a)(1) (emphasis added).

In reviewing an agency's construction of a statute that it administers, we apply the well-established test in *Chevron.* Under *Chevron,* the first step is "whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the mat-

ter, for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Chevron,* 467 U.S. at 842–43, 104 S.Ct. 2778. The court only takes the second step ("whether the agency's answer is based on a permissible construction of the statute") "if the statute is silent or ambiguous." *Id.* at 843, 104 S.Ct. 2778. Furthermore, *Chevron* noted that we have final authority on issues of statutory construction and that "[i]f a court, employing traditional tools of statutory construction, ascertains that Congress had an intention on the precise question at issue, the intent is the law and must be given effect." *Id.* n. 9 (citations omitted).

▆▆▆▆ In this case, the statutory language permitting "any person" to file a § 7111 petition is neither silent nor ambiguous. " 'A fundamental canon of statutory construction is that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning.' " *United States v. Smith,* 155 F.3d 1051, 1057 (9th Cir.1998) (quoting *Perrin v. United States,* 444 U.S. 37, 42, 100 S.Ct. 311, 62 L.Ed.2d 199 (1979)). Section 7103(a)(1), however, goes one step further by explicitly defining a "person" as an "individual, labor organization, or agency." " 'As a rule, "[a] definition which declares what a term 'means' . . . excludes any meaning that is not stated." ' " *Smith,* 155 F.3d at 1057 (quoting *Colautti v. Franklin,* 439 U.S. 379, 392–93 n. 10, 99 S.Ct. 675, 58 L.Ed.2d 596 (1979) (quoting 2A C. Sands, Statutes and Statutory Construction § 47.07 (4th ed. Supp.1978), *overruled on other grounds by Webster v. Reproductive Health Servs.,* 492 U.S. 490, 109 S.Ct. 3040, 106 L.Ed.2d 410 (1989))).

We conclude that the intent of Congress was unambiguous. Congress has permitted "any person" to file a § 7111 petition and specifically defined a "person" as an "individual." Given the clarity of Congress's intent in this case, we will not inquire beyond the first step of the *Chevron* test. Therefore, we will not address the policy and practical considerations advanced by the FLRA. We will, however,

briefly address the FLRA's textual arguments.

First, the FLRA contends that § 7111(b) does not establish the requirements for filing representation petitions because it says "*If* a petition is filed with the Authority . . ." 5 U.S.C. § 7111(b)(2) (emphasis added). This argument presumes that Congress intended for the FLRA to define what constitutes a valid petition and to define who may file it. This presumption, however, ignores the statute's plain meaning that such a petition may be filed "by any person."

Second, the FLRA argues that the statutory definition of a "person" is stated in the disjunctive ("individual, labor organization, *or* agency") and therefore may be limited by context. While this may be true in some cases, the argument is inapplicable here. The statutory definition expanded the traditional definition of "person" to include labor organizations and agencies. In this case, a "person" at a minimum refers to natural persons. Furthermore, the statute says—without limitation—"*any* person," suggesting that in this context either an individual, labor organization, or agency may file such a petition. The FLRA attempts to provide an alternative meaning in the face of an explicit statutory definition, thus violating the traditional canons of statutory construction. Therefore, under *Chevron,* the FLRA's regulation denying individuals the standing to file a § 7111 petition is invalid because it contravenes the unambiguous intent of Congress.

## IV. CONCLUSION

We recognize that in most cases the FLRA deserves considerable deference in interpreting statutes and in making policy in the complex world of federal labor relations. Our opinion does not disturb the FLRA's unreviewable authority to clarify and make appropriate unit determinations. This is one of the rare cases, however, in which the FLRA's regulation oversteps the bounds established by Congress. The

plain language of the statutes is clear and unambiguous—we find that we have jurisdiction over final FLRA orders except those under § 7112, and that the FLRA regulation denying individuals standing to file § 7111 petitions is invalid. The petition for review is granted. The FLRA's decision is reversed.

REVERSED.